

**CORPORATION SERVICE COMPANY®**

# Notice of Service of Process

**SLM / ALL**
**Transmittal Number: 7847858**
**Date Processed: 07/23/2010**

| | |
|---|---|
| Primary Contact: | Pamela Hoff<br>The Travelers Companies, Inc.<br>385 Washington Street,  MC 515A<br>Saint Paul, MN 55102 |

| | |
|---|---|
| **Entity:** | The Travelers Indemnity Company<br>Entity ID Number  2317465 |
| **Entity Served:** | Travelers |
| **Title of Action:** | Helene Antionette Ansrau Siegler vs. ACE American Insurance Company |
| **Document(s) Type:** | Citation/Petition |
| **Nature of Action:** | Contract |
| **Court:** | East Baton Rouge Parish District Court - City Court of Zachary, Louisiana |
| **Case Number:** | 592126 |
| **Jurisdiction Served:** | Florida |
| **Date Served on CSC:** | 07/22/2010 |
| **Answer or Appearance Due:** | 15 Days |
| **Originally Served On:** | Travelers on 07/22/2010 |
| **How Served:** | Client Direct |
| Sender Information: | Michael G. Durand<br>337-237-2660 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
*CSC is SAS70 Type II certified for its Litigation Management System.*
2711 Centerville Road  Wilmington, DE 19808  (888) 690-2882  |  sop@cscinfo.com



EXHIBIT

A

## State of Louisiana
## Secretary of State

07/12/2010

Legal Services Section
P.O. Box 94125, Baton Rouge, LA 70804-9125
(225) 922-0415

TRAVELERS INSURANCE COMPANY
C/O METLIFE INSURANCE COMPANY OF CONNECTICUT
18210 CRANE NEST DRIVE
. TAMPA, FL  33647

Received

JUL 20 2010

Law Department

Suit No.: 592126
19TH JUDICIAL DISTRICT COURT
EAST BATON ROUGE PARISH

HELENE A. ANDRAU SIEGLER ET AL.
vs
ACE AMERICAN INSURANCE COMPANY ET AL.

CORPORATE LITIGATION
HARTFORD

JUL 2 2 2010

RECEIVED PM

Dear Sir/Madam:

I am enclosing citation served in regard to the above entitled proceeding.  Please call the attorney that filed this
document if you have any questions regarding this proceeding.  If you received this document in error, please
return it to the above address with a letter of explanation.

Yours very truly,

JAY DARDENNE
Secretary of State

Served on:  JAY DARDENNE
Served by:  E. CUMMINS

Date: 07/09/2010
Title:  DEPUTY SHERIFF

No: 816237



AM

2424-10-006525

# CITATION

HELENE A. ANDRAU SIEGLER, ET AL
(Plaintiff)

Vs.

ACE AMERICAN INSURANCE COMPANY,
ET AL.
(Defendant)

NUMBER C592126 SECTION 26

19th JUDICIAL DISTRICT COURT

PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

TO:   *THE TRAVELERS INSURANCE COMPANY*
      THROUGH THEIR AGENT FOR SERVICE OF PROCESS:
      THE SECRETARY OF STATE OF LOUISIANA

SERVED ON
JAY DARDENNE

JUL 08 2010

GREETINGS:

SECRETARY OF STATE
COMMERCIAL DIVISION

Attached to this citation is a certified copy of the petition*. The petition tells you what you are being
sued for.

You must EITHER do what the petition asks OR, within fifteen (15) days after you have received
these documents, you must file an answer or other legal pleading in the office of the Clerk of Court at the
Governmental Building, 222 St. Louis Street, Baton Rouge, Louisiana.

If you do not do what the petition asks, or if you do not file an answer or legal pleading within fifteen
(15) days, a judgment may be rendered against you without further notice.

This citation was issued by the Clerk of Court for East Baton Rouge Parish on 07-JUL-2010.

Jessica Hughes, Deputy Clerk of Court For
Doug Welborn, Clerk of Court

Requesting Attorney: MICHAEL GONZALES DURAND

Also attached are the following documents:
PETITION FOR DECLARATORY JUDGMENT AND DAMAGES;
INTERROGATORIES, REQUEST FOR ADMISSIONS, AND REQUEST FOR
PRODUCTION OF DOCUMENTS

### SERVICE INFORMATION:

Received on the _____ day of _____, 20 ___ and on the _____ day of _____, 20 _____, served
on the above named party as follows:

SECRETARY OF STATE:   By tendering same to the within named, by handing same to _____.

DUE AND DILIGENT:   After diligent search and inquiry, was unable to find the within named _____ or
his domicile, or anyone legally authorized to represent him.

RETURNED:   Parish of East Baton Rouge, this _____ day of _____, 20 _____.

SERVICE:   $ _____
MILEAGE   $ _____
TOTAL:    $ _____

Deputy Sheriff
Parish of East Baton Rouge

CITATION - 2424

RECEIVED
JUL 08 2010
E.B.R. SHERIFF'S OFFICE

BBR335654

| | |
|---|---|
| HELENE ANTOINETTE ANDRAU SIEGLER AND BARBARA ANDRAU PECK POWELL | DOCKET NO. 592-186 - 26 |
| VERSUS | 19TH JUDICIAL DISTRICT COURT |
| ACE AMERICAN INSURANCE COMPANY, INSURANCE COMPANY OF NORTH AMERICA, AMERICAN MOTORISTS INSURANCE COMPANY, AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY, LUMBERMENS MUTUAL CASUALTY COMPANY, THE TRAVELERS INSURANCE COMPANY, AND THE TRAVELERS INDEMNITY COMPANY | PARISH OF EAST BATON ROUGE STATE OF LOUISIANA |

## PETITION FOR DECLARATORY JUDGMENT AND DAMAGES

NOW INTO COURT, through undersigned counsel, come and appear come Plaintiffs, Helene Antoinette Andrau Siegler and Barbara Andrau Peck Powell ("Andrau"), persons of the full age of majority and domiciled in the state of Texas, and respectfully represent the following:

1.

Named as defendants herein are American Motorists Insurance Company, American Manufacturers Mutual Insurance Company, and Lumbermens Mutual Casualty Company, (all sometimes jointly referred to herein as "Kemper"); The Travelers Insurance Company and The Travelers Indemnity Company (sometimes jointly referred to herein as "Travelers"); and Insurance Company of North America and ACE American Insurance Company (sometimes jointly referred to herein as "ACE"). These defendants are sometimes collectively referred to as "Insurer Defendants."

2.

All of the Insurer Defendants are foreign insurers domiciled in the following states:

A.  American Motorists Insurance Company: Illinois;

B.  American Manufacturers Mutual Insurance Company: Illinois;

C.  Lumbermens Mutual Casualty Company: Illinois

D.  The Travelers Insurance Company: Connecticut;

E.  The Travelers Indemnity Company: Connecticut

F.  Insurance Company of North America: Pennsylvania; and

G.  ACE American Insurance Company, Pennsylvania.

-1-

3.

At all pertinent times hereto, each of the Insurer Defendants was authorized to do and doing

business in the state of Louisiana and appointed the following persons as their agents for service of

process: .

A.    American Motorists Insurance Company: the Louisiana Secretary of State,
      8585 Archives Avenue, Baton Rouge, LA 70809;

B.    American Manufacturers Mutual Insurance Company: the Louisiana Secretary
      of State, 8585 Archives Avenue, Baton Rouge, LA 70809;

C.    Lumbermens Mutual Casualty Company: the Louisiana Secretary of State,
      8585 Archives Avenue, Baton Rouge, LA 70809;

D.    The Travelers Insurance Company: the Louisiana Secretary of State, 8585
      Archives Avenue, Baton Rouge, LA 70809;

E.    The Travelers Indemnity Company: the Louisiana Secretary of State, 8585
      Archives Avenue, Baton Rouge, LA 70809;

F.    Insurance Company of North America: the Louisiana Secretary of State, 8585
      Archives Avenue, Baton Rouge, LA 70809;

G.    ACE American Insurance Company: the Louisiana Secretary of State, 8585
      Archives Avenue, Baton Rouge, LA 70809.

4.

This action is brought by Andrau against Insurer Defendants because they are entities

involved in a contract or contracts of insurance with Andrau or providing coverage to Andrau as an

additional insured(s), and Andrau is entitled bring this action for damages as well as being entitled to

a declaration of Andrau's rights under the applicable insurance contracts as against Insurer

Defendants under the provisions of the Louisiana Declaratory Judgment Act, La. C.C.P. arts. 1871-

1883.

5.

This Honorable Court is a court of competent jurisdiction for the subject matter in

controversy and has personal jurisdiction over the parties in question. Additionally, because Insurer

Defendants are foreign insurers, venue for this action is proper in East Baton Rouge Parish,

Louisiana. La. C.C.P. art. 42(7).

6.

This action is appropriate and timely under the law of the state of Louisiana, including

without limitation the Louisiana Declaratory Judgment Act, as that Act authorizes the construction

of a contract either before or after there has been a breach thereof. In the instant matter, as will be

demonstrated below, Insurer Defendants have breached their contracts of insurance providing defense and coverage to Andrau in that they have failed to provide a defense to Andrau in a lawsuit and related claims filed and/or made against Andrau, and have breached their duties to Andrau in that they have refused to provide any information requested by Andrau concerning the policies in question. La. C.C.P. art. 1873.

7.

Andrau is entitled to a declaration that Insurer Defendants breached their contracts with Andrau in that they have failed to provide a defense to the lawsuit against Andrau described below and have failed to acknowledge their obligations to Andrau for defense and indemnity to Andrau despite amicable demand. Additionally, Andrau is entitled to any supplemental relief which this Court may deem necessary and/or proper in the premises. La. C.C.P. arts. 1872, 1873, 1875, and 1878.

8.

By Insurer Defendants' breach of their contractual and other obligations to Andrau, Andrau is entitled to a judgment declaring that Insurer Defendants are in breach of their obligations, and further that Insurer Defendants are responsible to Andrau for all defense costs, fees, and expenses, as well as monetary damages in an amount equal to all amounts for which Andrau is or may be found responsible to any other person or entity that recovers any amounts against Andrau or to whom defense and/or indemnity is owed which would have been covered by the policies and coverages that Insurer Defendants provided for the benefit of Andrau.

9.

Andrau has been sued as defendant(s) by certain property owners in a matter entitled "Katherine G. Orillion, et al v. Texaco, Inc., et al," said action bearing Docket No. 30718 of the 18th Judicial District Court in and for the Parish of Pointe Coupee, State of Louisiana (sometimes referred to herein as the "Orillion matter").

10.

The Orillion matter involves claims against Andrau in tort, contract, and otherwise for alleged damages to real and other property located in the Parish of Pointe Coupee, Louisiana. Andrau is/are alleged to be non-operating working interest owners of a lease/leases from the property owners and plaintiffs in the Orillion matter affecting said property. Additionally, the

3193843.1

Orillion matter asserts damages in tort, contract, and otherwise against Andrau which qualify as bodily injury, personal injury, property damage or other covered damages or claims, which are on information and belief covered under the policies of insurance issued by the Insurer Defendants to Texaco and providing coverage to Andrau and include but are not limited to damages for property damage, trespass, nuisance, mental distress, annoyance, and inconvenience.

11.

Additionally, the Orillion matter includes claims of punitive and/or exemplary damages against Andrau.

12.

A copy of the petitions in the Orillion matter is attached hereto as Exhibit A and is incorporated herein by reference to state the claims being made against Andrau. Andrau has and continues to deny that they were/are guilty of any actions or inactions constituting fault, negligence, or other liability to the plaintiffs as a result of the allegations made in the Orillion matter against Andrau and denies that they caused any damages to plaintiffs in the Orillion matter, or that the lease(s) in question or any applicable law renders Andrau liable to plaintiffs in the Orillion matter.

13.

Any interests Andrau may have owned in the property or leases at issue were only non-operating working interest ownership, and Andrau engaged in no activities or actions whatsoever on or affecting the property at issue.

14.

The actual operators of the properties in question at all times pertinent to the claims at issue were Texaco, Inc. and Texaco Exploration and Production, Inc. (sometimes jointly and/or separately referred to herein as "Texaco") and/or others operating on their behalf and for whom Texaco is legally responsible.

15.

At various times in the past, Texaco and/or their predecessors and successors and Andrau or their predecessors entered into certain contractual agreements, including but not limited to exploration agreements and/or Joint Operating Agreements and/or Operating Agreements and/or other contractual agreements involving all or, alternatively, a portion of the properties which are the

subject of the underlying lawsuit in Pointe Coupee Parish. These agreements include but are not

limited to the following:

(a)    Operating Agreement, dated January 8, 1948, between E.W.K. Andrau and The Texas Company, covering certain leases and lands in Pointe Coupee Parish, Louisiana, along with certain amendments thereto;

(b)    Operating Agreement for the Clark RB SUA, Fordoche Field, Pointe Coupee Parish, Louisiana, by and between Texaco, Inc. and Nicklos Oil & Gas Company, et al, dated effective October 1, 1962;

(c)    Operating Agreement for the 8000 RA SUA, Fordoche Field, Pointe Coupee Parish, Louisiana, by and between Texaco Exploration and Production Inc. and Fordoche Inc., dated effective November 14, 1995;

(d)    Operating Agreement, dated August 9, 1949, by and between The Texas Company , W.L. Funderburk, E.W.K. Andrau, and E.J. Nicklos, covering certain leases and lands in Point Coupee Parish, Louisiana;

(e)    Operating Agreement for the "Q" Sand Unit B, Fordoche Field, Pointe Coupee Parish, Louisiana, by and between Texaco, Inc. and Nicklos Oil & Gas Company, et al, dated September 1, 1961;

(f)    Operating Agreement and Pressure Maintenance Agreement for the "K" and Upper Dearing Sands, Fordoche Field, Pointe Coupee Parish, Louisiana, by and between Texaco, Inc. and Nicklos Oil and Gas Company, et al, dated August 29, 1962;

(g)    Operating Agreement for the 8750' Sand Unit, Fordoche Field, Pointe Coupee Parish, Louisiana, by and between Texaco, Inc. and Nicklos Oil and Gas Company, et al, effective February 28, 1967;

(h)    Operating Agreement for the Long RA SU "A" Unit, Fordoche Field, Pointe Coupee Parish, Louisiana, by and between Texaco, Inc. and Nicklos Oil and Gas Company, et al, effective May 1, 1969;

(i)    Operating Agreement for the Long RA SU "B" Unit, Fordoche Field, Pointe Coupee Parish, Louisiana, by and between Texaco, Inc. and Nicklos Oil and Gas Company, et al, effective May 1, 1969;

(j)    Operating Agreement for the "L" Sand Unit, Fordoche Field, Pointe Coupee Parish, Louisiana, by and between Texaco, Inc. and Nicklos Oil and Gas Company, et al, effective December 1, 1969;

(k)    Operating Agreement for the 8080' RA SU "A" Sand Unit, Fordoche Field, Pointe Coupee Parish, Louisiana, by and between Texaco, Inc. and Nicklos Oil and Gas Company, et al, effective November 9, 1970;

(l)    Operating Agreement for the 8080' RA SU "B" Sand Unit, Fordoche Field, Pointe Coupee Parish, Louisiana, by and between Texaco, Inc. and Nicklos Oil and Gas Company, et al, effective November 9, 1970;

(m)    Operating Agreement for the 8150' RA SU "A" Sand Unit, Fordoche Field, Pointe Coupee Parish, Louisiana, by and between Texaco Exploration and Production, Inc. and Geraldine Robinson, et al, effective July 24, 1991;

3193843.1

(n)     Operating Agreement covering lands in the Fordoche Field, Pointe Coupee
        Parish, Louisiana, by and between The Texas Company and Danciger Oil
        Refining Co., et al, dated May 19, 1949;

(o)     Operating Agreement covering lands in the Fordoche Field, Pointe Coupee
        Parish, Louisiana, by and between The Texas Company and Danciger Oil
        Refining Co., et al, dated October 1, 1949.

16.

In the said agreements described above, Texaco, as operator and otherwise, assumed and
undertook responsibility for damages such as those alleged in this lawsuit, including without
limitation injuries resulting from the operations as alleged in this lawsuit, plugging and abandoning
the wells involved with the properties in question; remediating or otherwise restoring the surface and
groundwater and surface waters of the properties as required by law, the leases or other agreements
in question, regardless of when and/or how the obligations would arise; for securing appropriate
insurance coverage for Andrau to protect against the defense costs and claims associated with suits
of this nature, and other obligations as reflected by the agreements in question.

17.

Andrau has repeatedly made demand upon Texaco to provide notice to its insurance carriers,
which were required to provide coverage to Andrau pursuant to the agreements referenced above.
Texaco initially advised that Texaco was self-insured with respect to such losses as it had not
purchased insurance pursuant to the agreements. In July 2009, Texaco then advised that it had not in
fact notified its carriers.

18.

Based on this information, in July 2009, Andrau contacted in writing the carriers of Texaco
known to Andrau and made demand for defense and indemnity. Beginning in August 2009, the
carriers known to Andrau not only disclaimed coverage, advising that in 1995 the Texaco had settled
with the carriers and that the policies in question had been bought back by the carriers, but also
stated that the settlement was confidential and refused to provide any information to Andrau about
the policies in question or the settlement.

19.

The Insurer Defendants have breached the obligations to Andrau under the policies in
question. Texaco was obligated to secure insurance for Andrau as additional insureds under the
Texaco policies. Assuming that Texaco lived up to its obligations under the agreements, then a

contract or contracts existed between Andrau and the Insurer Defendants, and neither Texaco nor the Insurer Defendants could unilaterally deprive Andrau of its/their rights under the contracts without the consent of Andrau. As such, any settlement or buy-back of the policies as between Texaco and the Insurer Defendants is ineffective to alter the obligations between the Insurer Defendants and Andrau.

20.

The Insurer Defendants have, despite amicable demand by Andrau, wrongfully denied both coverage and defense to Andrau for the claims set forth and described herein and have refused to provide any information about the policies to Andrau, claiming that the settlement with Texaco, which the Insurer Defendants have also refused to provide to Andrau, precludes all rights of Andrau against the Insurer Defendants.

21.

On information and belief, the Insurer Defendants issued certain policies of liability insurance providing defense and indemnity to Andrau as additional insureds for claims, including lawsuits, brought against Andrau. The policies issued to Texaco by the Insurer Defendants currently known to Andrau and which are at issue in this case include, but are not necessarily limited to the following policies:

A. Policy No.: 4ZM/CM 578 555
Insurer: American Motorists Ins. Co.
Named Insured: Texaco, Inc.
Dates of Coverage: 1/1/1974 – 1/1/1975

B. Policy No.: 5ZM/CM 578 555
Insurer: American Motorists Ins. Co.
Named Insured: Texaco, Inc.
Dates of Coverage: 1/1/1975 – 1/1/1976

C. Policy No.: 6ZM/CM 578 555
Insurer: American Motorists Ins. Co.
Named Insured: Texaco, Inc.
Dates of Coverage: 1/1/1976 – 1/1/1977

D. Policy No.: 7ZM/CM 578 555
Insurer: American Motorists Ins. Co.
Named Insured: Texaco, Inc.
Dates of Coverage: 1/1/1977 – 1/1/1978

E. Policy No.: 8ZM/CM 578 555
Insurer: American Motorists Ins. Co.
Named Insured: Texaco, Inc.
Dates of Coverage: 1/1/1978 – 1/1/1979

-7-

F. Policy No.: RSL-97003-52
Insurer: The Travelers Ins. Co.
Named Insured: The Texas Co.
Dates of Coverage: 1/1/1952 – 1/1/1959

G. Policy No.: RSL-97003-61
Insurer: The Travelers Ins. Co.
Named Insured: Texaco, Inc.
Dates of Coverage: 1/1/1961 – 1/1/1962

H. Policy No.: RNSL-97003-62
Insurer: The Travelers Indemnity. Co.
Named Insured: Texaco, Inc.
Dates of Coverage: 1/1/1962 – 1/1/1963

I. Policy No.: RNSL-97003-63
Insurer: The Travelers Indemnity. Co.
Named Insured: Texaco, Inc.
Dates of Coverage: 1/1/1963 – 1/1/1964

J. Policy No.: RNSL-97003-63
Insurer: The Travelers Indemnity. Co.
Named Insured: Texaco, Inc.
Dates of Coverage: 1/1/1963 – 1/1/1964.

K. Policy No.: RNSL-97003-64
Insurer: The Travelers Indemnity. Co.
Named Insured: Texaco, Inc.
Dates of Coverage: 1/1/1964 – 1/1/1965

L. Policy No.: RNSL-97003-65; RUB-97000-65
Insurer: The Travelers Indemnity. Co.
Named Insured: Texaco, Inc.
Dates of Coverage: 1/1/1965 – 1/1/1966

M. Policy No.: RNSL-97003-66; RUB-97000-66
Insurer: The Travelers Indemnity. Co.
Named Insured: Texaco, Inc.
Dates of Coverage: 1/1/1966 – 1/1/1967

N. Policy No.: RNSL-97003-67; RUB-97000-67
Insurer: The Travelers Indemnity. Co.
Named Insured: Texaco, Inc.
Dates of Coverage: 1/1/1967 – 1/1/1968

O. Policy No.: TRNSL-97003-68; TRUB-97000-68
Insurer: The Travelers Indemnity. Co.
Named Insured: Texaco, Inc.
Dates of Coverage: 1/1/1968 – 1/1/1969

P. Policy No.: TRNSL-97003-69; TRUB-97000-69
Insurer: The Travelers Indemnity. Co.
Named Insured: Texaco, Inc.
Dates of Coverage: 1/1/1969 – 1/1/1970

Q. Policy No.: TRNSL-97003-70; TRUB-97000-70
Insurer: The Travelers Indemnity. Co.
Named Insured: Texaco, Inc.
Dates of Coverage: 1/1/1970 – 1/1/1971

-8-

R.   Policy No.: TRNSL-97003-71; TRUB-97000-71
     Insurer: The Travelers Indemnity. Co.
     Named Insured: Texaco, Inc.
     Dates of Coverage: 1/1/1971 – 1/1/1972

S.   Policy No.: TRNSL-97003-72; TRUB-97000-72
     Insurer: The Travelers Indemnity. Co.
     Named Insured: Texaco, Inc.
     Dates of Coverage: 1/1/1972 – 1/1/1973

T.   Policy No.: TR-NSL-97003-73; TR-UB-97000-73
     Insurer: The Travelers Indemnity. Co.
     Named Insured: Texaco, Inc.
     Dates of Coverage: 1/1/1973 – 1/1/1974

U.   Policy No.: SCG 1051/SCA 5034
     Insurer: Ins. Co. of North America
     Named Insured: Texaco, Inc.
     Dates of Coverage: 1/1/1979 – 1/1/1980

V.   Policy No.: SCG 1163/SCA 5143
     Insurer: Ins. Co. of North America
     Named Insured: Texaco, Inc.
     Dates of Coverage: 1/1/1980 – 1/1/1981

W.   Policy No.: SCG 1444/SCA 5335
     Insurer: Ins. Co. of North America
     Named Insured: Texaco, Inc.
     Dates of Coverage: 1/1/1981 – 1/1/1982

X.   Policy No.: SCG 1444/SCA 5335
     Insurer: Ins. Co. of North America
     Named Insured: Texaco, Inc.
     Dates of Coverage: 1/1/1981 – 1/1/1982

Y.   Policy No.: SCGGO 1339904/SCA5783
     Insurer: Ins. Co. of North America
     Named Insured: Texaco, Inc.
     Dates of Coverage: 1/1/1982 – 1/1/1983

Z.   Policy No.: SCG 312954/SCA 6312
     Insurer: Ins. Co. of North America
     Named Insured: Texaco, Inc.
     Dates of Coverage: 1/1/1984 – 12/31/1984

AA.  Policy No.: SCGGO 3132596/SCA 9190
     Insurer: Ins. Co. of North America
     Named Insured: Texaco, Inc.
     Dates of Coverage: 1/1/1985 – 12/31/1985

BB.  Policy No.: SCGGO 838291-8/SCA 010525
     Insurer: Ins. Co. of North America
     Named Insured: Texaco, Inc.
     Dates of Coverage: 1/1/1986 – 12/31/1986

22.

Although Andrau asserts that the policies listed above should provide coverage for the above-described events and claims, since Andrau has been denied coverage and defense by the Insurer Defendants that agreed to provide coverage and defense under the policies in question, Andrau is compelled to seek relief against Insurer Defendants for the costs incurred by Andrau to date and in the future in defending the lawsuit and claims described above, as well as a declaratory judgment against the Insurer Defendants decreeing that the Insurer Defendants are responsible for all defense, expert, and other costs and expenses incurred to date by Andrau in defending the Orillion matter and the claims described above, for appropriate and applicable statutory and other damages, penalties, interest, and attorney fees under appropriate law due to the refusal of the Insurer Defendants to defend and indemnify Andrau, and for their callous and indifferent refusal to provide to Andrau upon demand the documentation allegedly supporting their arbitrary and capricious actions, namely, the settlement/buy-back agreement with Texaco and copies of the policies in question. Insurer Defendants were, are, and continue to be arbitrary and capricious, and their actions and omissions are in violation of their contracts of insurance and applicable law.

23.

Andrau has been required to retain counsel to represent it in the Orillion matter as well as the other claims described above, the fees and expenses of which should have been covered by the policies of insurance issued to Texaco and providing coverage to Andrau by the Insurer Defendants.

24.

Andrau continues to incur costs, expenses, and fees in connection with the defense of the Orillion matter and other claims described herein.

25.

Andrau is entitled to recover as damages all costs, fees, and expenses it has been forced to incur as damages to date and additionally all costs and expenses it will be forced to incur in the future necessary to protect the interests of Andrau because of the failure of the Insurer Defendants to honor their agreements under the insurance policies in question.

26.

Andrau is therefore entitled to a declaration that all of the Insurer Defendants breached their contracts with Andrau in that they have failed to defend Andrau in the Orillion matter and have

3193843.1

failed to honor their obligations to Andrau in connection with the matters described herein. By said breach of their contractual obligations to Andrau, Andrau is entitled to a judgment declaring that all of the Insurer Defendants are in breach of their obligations to Andrau and, further, that the Insurer Defendants are responsible to Andrau for all defense costs, fees, and expenses, as well as monetary damages in an amount equal to all amounts for which Andrau may be found responsible to or liable to any other person or entity that recovers any amounts against Andrau or to whom any amounts or other relief is owed under or pursuant to contract, tort or otherwise, which is covered by the policies and coverages which the Insurer Defendants provided to Andrau.

27.

Andrau is additionally entitled to a declaration that the Insurer Defendants are liable to Andrau for appropriate and applicable statutory and other damages, penalties, interest, and attorney fees under appropriate law because the refusal of the Defendants to defend and indemnify Andrau was and continues to be arbitrary, capricious, without reasonable basis, and in violation of their contracts of insurance and applicable law.

28.

Andrau is also entitled to a declaration that the settlements and buy-backs between the Insurer Defendants and Texaco are void ab initio and of no force and effect as to Andrau, and that the settlement and buy-backs had no effect whatsoever upon the obligations of the Insurer Defendants to Andrau under the policies at issue.

29.

Andrau prays for trial by jury on all issues so triable.

WHEREFORE, Plaintiffs Helene Antoinette Andrau Siegler and Barbara Andrau Peck Powell pray that Defendants American Motorists Insurance Company, American Manufacturers Mutual Insurance Company, Lumbermens Mutual Casualty Company, The Travelers Insurance Company, The Travelers Indemnity Company, Insurance Company of North America, and ACE American Insurance Company be served with a copy of this Petition, and that after all due proceedings are had, there be judgment herein in favor of Helene Antoinette Andrau Siegler and Barbara Andrau Peck Powell and against American Motorists Insurance Company, American Manufacturers Mutual Insurance Company, Lumbermens Mutual Casualty Company, The Travelers

-11-

3193843.1

Insurance Company, The Travelers Indemnity Company, Insurance Company of North America, and ACE American Insurance Company for all damages incurred and to be incurred by Helene Antoinette Andrau Siegler and Barbara Andrau Peek Powell as a result of the failure of American Motorists Insurance Company, American Manufacturers Mutual Insurance Company, Lumbermens Mutual Casualty Company, The Travelers Insurance Company, The Travelers Indemnity Company, Insurance Company of North America, and ACE American Insurance Company to honor their obligations to Helene Antoinette Andrau Siegler and Barbara Andrau Peek Powell under the policies of insurance referenced above;

FURTHER, Helene Antoinette Andrau Siegler and Barbara Andrau Peek Powell pray for a declaratory judgment against American Motorists Insurance Company, American Manufacturers Mutual Insurance Company, Lumbermens Mutual Casualty Company, The Travelers Insurance Company, The Travelers Indemnity Company, Insurance Company of North America, and ACE American Insurance Company, decreeing that appropriate and applicable statutory and other damages, penalties, interest, and attorney fees under appropriate law are owed to Helene Antoinette Andrau Siegler and Barbara Andrau Peek Powell by American Motorists Insurance Company, American Manufacturers Mutual Insurance Company, Lumbermens Mutual Casualty Company, The Travelers Insurance Company, The Travelers Indemnity Company, Insurance Company of North America, and ACE American Insurance Company because the refusal of the Defendants to defend and indemnify Helene Antoinette Andrau Siegler and Barbara Andrau Peek Powell was and continues to be arbitrary, capricious, without reasonable basis, and in violation of their contracts of insurance and applicable law;

FURTHER, Helene Antoinette Andrau Siegler and Barbara Andrau Peek Powell pray for a declaratory judgment against American Motorists Insurance Company, American Manufacturers Mutual Insurance Company, Lumbermens Mutual Casualty Company, The Travelers Insurance Company, The Travelers Indemnity Company, Insurance Company of North America, and ACE American Insurance Company, decreeing that any purported settlement agreement or buy-back of the policies in question by the Insurer Defendants from Texaco is void ab initio and of no force and effect as to your Plaintiffs herein, or as to anyone who is or was considered as an additional insured under the policies;

AND FOR ALL GENERAL AND EQUITABLE RELIEF.

3193843.1

Respectfully submitted,

ONEBANE LAW FIRM
*A PROFESSIONAL CORPORATION*

BY:

MICHAEL J. DURAND (LSBA No. 05223)
Suite 300, 1200 Camellia Boulevard (70508)
Post Office Box 3507
Lafayette, LA 70502-3507
Telephone: (337) 237-2660
FAX: (337) 266-1232
Attorneys for Defendants Helene Antoinette
Andrau Siegler and Barbara Andrau Peck
Powel

PLEASE SERVE:

American Motorists Insurance Company
through its registered agent for service of process:
The Honorable Jay Dardenne
Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge, Louisiana

American Manufacturers Mutual Insurance Company
through its registered agent for service of process:
The Honorable Jay Dardenne
Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge, Louisiana

Lumbermens Mutual Casualty Company
through its registered agent for service of process:
The Honorable Jay Dardenne
Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge, Louisiana

The Travelers Insurance Company
through its registered agent for service of process:
The Honorable Jay Dardenne
Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge, Louisiana

The Travelers Indemnity Company
through its registered agent for service of process:
The Honorable Jay Dardenne
Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge, Louisiana

FILED June 09 2010
Signed _____
Dy. Clerk
A True Copy July 2013
_____
Dy. Clerk

-13-

3193843.1

Insurance Company of North America
through its registered agent for service of process:
The Honorable Jay Dardenne
Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge, Louisiana

ACE American Insurance Company
through its registered agent for service of process:
The Honorable Jay Dardenne
Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge, Louisiana

3193843.1

| | |
|---|---|
| KATHERINE G. ORILLION; | EIGHTEENTH (18TH) |
| JOSEPH LAYNE ORILLION; | JUDICIAL DISTRICT COURT |
| JOYCE GREEN KISSNER; | |
| JAMES E. KISSNER; | DIVISION: _H_ |
| JOHN W. GREEN, III; | |
| JULIE K. SALLES; | DOCKET NO. _30,718_ |
| DEBORAH DUPLANTIS; | |
| DR. MAURICE J. DUPLANTIS; | PARISH OF POINTE COUPEE |
| FAYE CHAUVIN MOORE; | |
| SIDNEY THOMAS CHAUVIN; | STATE OF LOUISIANA |

SUZETTE CHAUVIN LOWE;
DAN SETTOON;
ERTITH G. DOBBS;
LAWRENCE NELL CHAUVIN DEVERS;
JUANITA H. CHAUVIN MCARTY;
GEORGE LOWELL EMBREY;
HARRY EUGENE AUSTIN CHAUVIN;
NELL IRENE CHAUVIN;
WALTON A. CHAUVIN;
JOHNNIE BELLE CHAUVIN FLYNN;
LORETTA A. SPAHT;
CARLOS G. SPAHT;
LUCILLE A. COENEN;
MARCILE DOCKREY WORSHAM;
HAZEL WORSHAM GREGOIRE;
JOY LYNN KILROY;
DONALD H. MORGAN;
DAPHNE DRUMM;
CLARK F. WORSHAM;
PATRICK O. BEATTY;
MARJORIE WORSHAM VAVASSEUR;
and GLORIA BROWN SEELY

versus

TEXACO, INC.; TEXACO EXPLORATION
AND PRODUCTION, INC.; THE BURKWALL
CORPORATION; RONNIE J. THERIOT;
HELENE ANTOINETTE ANDRAU SIEGLER;
WILLIAM E. ANDRAU; BARBARA ANDRAU
PECK POWELL; and AMERICAN EXPLORATION
COMPANY OF DELAWARE

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

PETITION FOR CANCELLATION OF MINERAL LEASES
FOR ACTIVE BREACH THEREOF, AND FOR PROHIBITORY AND MANDATORY
INJUNCTIVE RELIEF, DAMAGES, PENALTIES, EXEMPLARY DAMAGES, AND
ATTORNEY'S FEES FOR CONTAMINATION OF THE SURFACE ESTATE AND
THE ENVIRONMENT

NOW INTO COURT, through undersigned counsel, come KATHERINE G.

ORILLION; JOSEPH LAYNE ORILLION; JOYCE GREEN KISSNER; JAMES E. KISSNER;

JOHN W. GREEN, III; JULIE K. SALLES; DEBORAH DUPLANTIS; DR. MAURICE J.

DUPLANTIS; FAYE CHAUVIN MOORE; SIDNEY THOMAS CHAUVIN; SUZETTE

*Page 1 of 49 pages*

EXHIBIT A

CHAUVIN LOWE; DAN SETTOON; ERTITH G. DOBBS; LAWRENCE NELL CHAUVIN DEVERS; JUANITA H. CHAUVIN MCARTY; GEORGE LOWELL EMBREY; HARRY EUGENE AUSTIN CHAUVIN; NELL IRENE CHAUVIN; WALTON A. CHAUVIN; JOHNNIE BELLE CHAUVIN FLYNN; LORETTA A. SPAHT; CARLOS G. SPAHT; LUCILLE A. COENEN; MARCILE DOCKREY WORSHAM; HAZEL WORSHAM GREGOIRE; JOY LYNN KILROY; DONALD H. MORGAN; DAPHNE DRUMM; CLARK F. WORSHAM; PATRICK O. BEATTY; MARJORIE WORSHAM VAVASSEUR; and GLORIA BROWN SEELY, Plaintiffs, who, with respect, aver as follows:

### PLAINTIFFS

1.

KATHERINE G. ORILLION and JOSEPH LAYNE ORILLION are persons of the full age of majority and domiciled in Pointe Coupe Parish, Louisiana, being heirs, assigns, owners, or successors in interest to that certain tract of land, containing 210 acres, more or less, situated in the eastern half of Section 27, Township 6 South, Range 8 East, Pointe Coupee Parish, Louisiana; and that certain tract of land, containing 63.25 acres, more or less, situated in the northwestern quarter of Section 28, Township 6 South, Range 8 East, Point Coupee Parish, Louisiana.

2.

JOYCE GREEN KISSNER and JAMES E. KISSNER are persons of the full age of majority and domiciled in Pointe Coupee Parish, Louisiana, being heirs, assigns, owners, or successors in interest to that certain tract of land, containing 320.3 acres, more or less, situated in the eastern half of Section 22, Township 6 South, Range 8 East, Pointe Coupee Parish, Louisiana; that certain tract of land, containing 110.4 acres, more or less, situated in the eastern half of Section 27, Township 6 South, Range 8 East, Pointe Coupee Parish, Louisiana; that certain tract of land, containing 243 acres, more or less, located in Sections 31 and 32, Township 5 South, Range 8 East, and Section 21, Township 6 South, Range 8 East, Pointe Coupee Parish, Louisiana; that certain tract of land, containing 48 acres, more or less, situated in the northeastern quarter of Section 21, Township 6 South, Range 8 East, Pointe Coupee Parish, Louisiana; and that certain tract of land, containing 43 acres, more or less, situated in the northwestern quarter of Section 28, Township 6 South, Range 8 East.

3.

JOHN W. GREEN, III is a person of the full age of majority and domiciled in East Baton Rouge Parish, Louisiana, being an heir, assign, owner, or successor in interest to that certain tract of land, being designated as Lot 4, containing 50.27 acres, more or less, situated in Section 28, Township 6 South, Range 8 East, Pointe Coupee Parish, Louisiana.

4.

JULIE K. SALLES is a person of the full age of majority and domiciled in Los Angeles County, California, being an heir, assign, owner, or successor in interest to that tract of land containing 267 acres, more or less, situated in Sections 31 and 87, Township 5 South, Range 8 East, Pointe Coupee Parish, Louisiana.

5.

DEBORAH DUPLANTIS is a person of the full age of majority and domiciled in St. Tammany Parish, Louisiana, being an heir, assign, owner, or successor in interest to that certain tract of land containing 267 acres, more or less, situated in Sections 31 and 87, Township 5 South, Range 8 East, Pointe Coupee Parish, Louisiana.

6.

DR. MAURICE J. DUPLANTIS is a person of the full age of majority and domiciled in St. Tammany Parish, Louisiana, being an heir, assign, owner, or successor in interest to that certain tract of land containing 267 acres, more or less, situated in Sections 31 and 87, Township 5 South, Range 8 East, Pointe Coupee Parish, Louisiana.

7.

FAYE CHAUVIN MOORE is a person of the full age of majority and domiciled in East Baton Rouge Parish, Louisiana, being an heir, assign, owner, or successor in interest to that certain tract of land containing 47 acres, more or less, situated in the northeastern quarter and southeastern quarter of Section 28, Township 6 South, Range 8 East, Pointe Coupee Parish, Louisiana.

8.

SIDNEY THOMAS CHAUVIN is a person of the full age of majority and domiciled in East Baton Rouge Parish, Louisiana, being an heir, assign, owner, or successor in interest to that certain tract of land containing 47 acres, more or less, situated in the northeastern quarter

and southeastern quarter of Section 28, Township 6 South, Range 8 East, Pointe Coupee Parish, Louisiana.

9.

SUZETTE CHAUVIN LOWE is a person of the full age of majority and domiciled in East Baton Rouge Parish, Louisiana, being an heir, assign, owner, or successor in interest to that certain tract of land containing 47 acres, more or less, situated in the northeastern quarter and southeastern quarter of Section 28, Township 6 South, Range 8 East, Pointe Coupee Parish, Louisiana.

10.

DAN SETTOON is a person of the full age of majority and domiciled in Pointe Coupee Parish, Louisiana, being an heir, assign, owner, or successor in interest to that certain tract of land containing 43.25 acres, more or less, situated in Section 21 and 28, Township 6 South, Range 8 East, Pointe Coupee Parish, Louisiana.

11.

ERTITH G. DOBBS is a person of the full age of majority and domiciled in East Baton Rouge Parish, Louisiana, being an heir, assign, owner, or successor in interest to that certain tract of land, being designated as Lot 2 of the Green Partition, containing 37.49 acres, more or less, situated in Section 28, Township 6 South, Range 8 East, Pointe Coupee Parish, Louisiana.

12.

LAWRENCE NELL CHAUVIN DEVERS is a person of the full age of majority and domiciled in Houston, Harris County, Texas, being an heir, assign, owner, or successor in interest to that certain tract of land containing 47 acres, more or less, situated in the northeastern quarter and southeastern quarter of Section 28, Township 6 South, Range 8 East, Pointe Coupee Parish, Louisiana.

13.

JUANITA H. CHAUVIN MCARTY is a person of the full age of majority and domiciled in Harris County, Texas, being an heir, assign, owner, or successor in interest to that certain tract of land containing 47 acres, more or less, situated in the northeastern quarter and southeastern quarter of Section 28, Township 6 South, Range 8 East, Pointe Coupee Parish, Louisiana.

14.

GEORGE LOWELL EMBREY is a person of the full age of majority and domiciled in Harris County, Texas, being an heir, assign, owner, or successor in interest to that certain tract of land containing 47 acres, more or less, situated in the northeastern quarter, and southeastern quarter of Section 28, Township 6 South, Range 8 East, Pointe Coupee Parish, Louisiana.

15.

HARRY EUGENE AUSTIN CHAUVIN is a person of the full age of majority and domiciled in Madison County, Texas, being an heir, assign, owner, or successor in interest to that certain tract of land containing 47 acres, more or less, situated in the northeastern quarter and southeastern quarter of Section 28, Township 6 South, Range 8 East, Pointe Coupee Parish, Louisiana.

16.

NELL IRENE CHAUVIN is a person of the full age of majority and domiciled in a resident of Miller County, Arkansas, being an heir, assign, owner, or successor in interest to that certain tract of land containing 47 acres, more or less, situated in the northeastern quarter and southeastern quarter of Section 28, Township 6 South, Range 8 East, Pointe Coupee Parish, Louisiana.

17.

WALTON A. CHAUVIN is a person of the full age of majority and domiciled in Sacramento County, California, being an heir, assign, owner, or successor in interest to that certain tract of land containing 47 acres, more or less, situated in the northeastern quarter and southeastern quarter of Section 28, Township 6 South, Range 8 East, Pointe Coupee Parish, Louisiana.

18.

JOHNNIE BELLE CHAUVIN FLYNN is a person of the full age of majority and domiciled in East Baton Rouge Parish, Louisiana, being an heir, assign, owner, or successor in interest to that certain tract of land containing 47 acres, more or less, situated in the northeastern quarter and southeastern quarter of Section 28, Township 6 South, Range 8 East, Pointe Coupee Parish, Louisiana.

19.

LORETTA A. SPAHT is a person of the full age of majority and domiciled in East Baton Rouge Parish, Louisiana, being an heir, assign, owner, or successor in interest to that certain tract of land containing 70 acres, more or less, situated in Section 30, Township 6 South, Range 8 East, Pointe Coupee Parish, Louisiana.

20.

CARLOS G. SPAHT is a person of the full age of majority and domiciled in East Baton Rouge Parish, Louisiana, being an heir, assign, owner, or successor in interest to that certain tract of land containing 70 acres, more or less, situated in Section 30, Township 6 South, Range 8 East, Pointe Coupee Parish, Louisiana.

21.

LUCILLE A. COENEN is a person of the full age of majority and domiciled in East Baton Rouge Parish, Louisiana, being an heir, assign, owner, or successor in interest to that certain tract of land containing 70 acres, more or less, situated in Section 30, Township 6 South, Range 8 East, Pointe Coupee Parish, Louisiana.

22.

MARCILE DOCKREY WORSHAM, is a person of the full age of majority and domiciled in East Baton Rouge Parish, Louisiana, being an heir, assign, owner, or successor in interest to that certain tract of land, being designated as Tract 3 of the Clark Partition, containing 41 acres, more or less, being situated in Section 21, Township 6 South, Range 8 East, Pointe Coupee Parish, Louisiana.

23.

HAZEL WORSHAM GREGOIRE, is a person of the full age of majority and domiciled in Livingston Parish, Louisiana, being an heir, assign, owner, or successor in interest to that certain tract of land, being designated as Tract 3 of the Clark Partition, containing 41 acres, more or less, being situated in Section 21, Township 6 South, Range 8 East, Pointe Coupee Parish, Louisiana.

24.

JOY LYNN KILROY, is a person of the full age of majority and domiciled in Knox County, Tennessee, being an heir, assign, owner, or successor in interest to that certain tract

of land, being designated as Tract 3 of the Clark Partition, containing 41 acres, more or less, being situated in Section 21, Township 6 South, Range 8 East, Pointe Coupee Parish, Louisiana.

25.

DONALD H. MORGAN, is a person of the full age of majority and domiciled in Freeport, Florida, being an heir, assign, owner, or successor in interest to that certain tract of land, being designated as Tract 3 of the Clark Partition, containing 41 acres, more or less, being situated in Section 21, Township 6 South, Range 8 East, Pointe Coupee Parish, Louisiana.

26.

DAPHNE DRUMM, is a person of the full age of majority and domiciled in Jefferson Parish, Louisiana, being an heir, assign, owner, or successor in interest to that certain tract of land, being designated as Tract 3 of the Clark Partition, containing 41 acres, more or less, being situated in Section 21, Township 6 South, Range 8 East, Pointe Coupee Parish, Louisiana.

27.

CLARK F. WORSHAM, is a person of the full age of majority and domiciled in Jefferson Parish, Louisiana, being an heir, assign, owner, or successor in interest to that certain tract of land, being designated as Tract 3 of the Clark Partition, containing 41 acres, more or less, being situated in Section 21, Township 6 South, Range 8 East, Pointe Coupee Parish, Louisiana.

28.

PATRICK O. BEATTY, is a person of the full age of majority and domiciled in West Baton Rouge Parish, Louisiana, being an heir, assign, owner, or successor in interest to that certain tract of land, being designated as Tract 4 of the Clark Partition, containing 45 acres, more or less, being situated in Section 21, Township 6 South, Range 8 East, Pointe Coupee Parish, Louisiana.

29.

MARJORIE WORSHAM VAVASSEUR, is a person of the full age of majority and domiciled in Washington Parish, Louisiana, being an heir, assign, owner, or successor in interest to that certain tract of land, being designated as Tract 3 of the Clark Partition, containing 41 acres, more or less, being situated in Section 21, Township 6 South, Range 8 East, Pointe Coupee Parish, Louisiana.

30.

GLORIA BROWN SEELY is a person of the full age of majority and domiciled in Fairfax County, Virginia, being an heir, assign, owner, or successor in interest to that certain tract of land, being designated as Lot 1, containing 38.658 acres, more or less, being situated in the northeastern quarter and southeastern quarter of Section 28, Township 6 South, Range 8 East, Pointe Coupee Parish, Louisiana.

## DEFENDANTS

31.

Made Defendant herein is TEXACO, INC. (hereinafter referred to as "TEXACO"), a Delaware corporation having its principal place of business in the State of New York, authorized to do and doing business in the State of Louisiana, with its principal place of business in Louisiana located in Orleans Parish, formerly referred to as "The Texas Company" and/or being the successor in interest to The Texas Company, whose registered agent for service of process is Prentice Hall Corporation Systems, 203 Carondelet Street, New Orleans, Louisiana, 70130.

32.

Made additional Defendant herein is TEXACO EXPLORATION AND PRODUCTION, INC. (hereinafter referred to as "TEPI"), a Delaware corporation, having its principal place of business in the State of Texas, authorized to do and doing business in the State of Louisiana, with its principal place of business in Louisiana located in Orleans Parish, Louisiana, whose registered agent for service of process is Prentice Hall Corporation Systems, 203 Carondelet Street, New Orleans, Louisiana, 70130.

33.

Made additional Defendants herein are THE BURKWALL CORPORATION, a Louisiana corporation authorized to do and doing business in the State of Louisiana, with its principal place of business located in Terrebonne Parish, Louisiana, having no registered agent for service of process; and RONNIE J. THERIOT, a person of the full age of majority and domiciled in Terrebonne Parish, Louisiana, being the successor in interest to THE BURKWALL CORPORATION, individually and as liquidator of THE BURKWALL CORPORATION (hereinafter referred to collectively as "BURKWALL").

34.

Made additional Defendants herein are the heirs, successors, and/or assigns of decedent, E. W. K. Andrau; namely, HELENE ANTOINETTE ANDRAU SIEGLER, a person of the full age of majority and domiciled in Harris County, Texas; WILLIAM E. ANDRAU, a person of the full age of majority and domiciled in Harris County, Texas; and BARBARA ANDRAU PECK POWELL, a person of the full age of majority and domiciled in Washington County, Texas (hereinafter referred to individually and collectively as "ANDRAU").

35.

Made additional Defendant herein is AMERICAN EXPLORATION COMPANY OF DELAWARE (referred to hereinafter as "AMERICAN"), a Delaware corporation with its principal place of business in the State of Texas, authorized to do and doing business in the State of Louisiana, with its principal place of business in Louisiana located in East Baton Rouge Parish, whose registered agent for service of process is C.T. Corporation Systems, 8550 United Plaza Boulevard, Baton Rouge, Louisiana 70809.

CAPACITY

36.

During the 1940's, Plaintiffs or their ancestors-in-title entered into multiple oil, gas, and mineral leases (hereinafter referred to individually and collectively as "Plaintiffs' Leases"), covering the lands referenced in Paragraphs 1 through 30, above (hereinafter referred to individually and collectively as "Plaintiffs' Properties").

37.

TEXACO is the original lessee under some of Plaintiffs' Leases, covering some of Plaintiffs' Properties.

38.

TEXACO has acquired an interest in all or substantially all of Plaintiffs' Leases, covering all or substantially all of Plaintiffs' Properties, by various assignments, and has accepted the obligations of a mineral lessee under all or substantially all of Plaintiffs' Leases.

39.

TEXACO has operated all or substantially all of Plaintiffs' Leases, covering all or substantially all of Plaintiffs' Properties.

40.

TEXACO has also operated and/or acquired an interest in certain oil, gas, and mineral leases covering other lands adjacent to or near Plaintiffs' Properties, and has accepted the obligations of a mineral lessee under the oil, gas, and mineral leases covering such properties.

41.

TEPI has acquired interests in all or substantially all of Plaintiffs' Leases, covering all or substantially all of Plaintiffs' Properties, by assignment from TEXACO, and has accepted the obligations of a mineral lessee under all or substantially all of Plaintiffs' Leases.

42.

TEPI has operated all or substantially all of Plaintiffs' Leases, covering all or substantially all of Plaintiffs' Properties.

43.

TEPI has also operated and/or acquired an interest in certain oil, gas, and mineral leases, covering other lands adjacent to or near Plaintiffs' Properties, and has accepted the obligations of a mineral lessee under the oil, gas, and mineral leases covering such properties.

44.

TEPI is a wholly-owned subsidiary of TEXACO.

45.

THE BURKWALL CORPORATION is the original lessee under that certain oil, gas, and mineral lease covering the property referenced in Paragraph 30, above.

46.

Plaintiff, GLORIA B. SEELY, is the third (3rd) party beneficiary of any contractual relationship between BURKWALL and TEXACO with regard to restoration of Plaintiffs' Properties referenced in Paragraph 30, above, to its original condition, at the earliest reasonable time.

47.

RONNIE J. THERIOT, individually and as liquidator of THE BURKWALL CORPORATION, is the successor in interest to THE BURKWALL CORPORATION, and has accepted the obligations of lessee under that certain oil, gas, mineral and lease covering Plaintiffs' Properties referenced in Paragraph 30, above.

48.

ANDRAU is the original lessee under some of Plaintiffs' Leases, covering some of Plaintiffs' Properties.

49.

ANDRAU acquired an undivided one-half (1/2) working interest in some of Plaintiffs' Leases, covering some of Plaintiffs' Properties.

50.

Nicklos Oil & Gas Company acquired an undivided one-fourth (1/4) working interest from Andrau in some of Plaintiffs' Leases, covering some of Plaintiffs' Properties.

51.

AMERICAN acquired the entirety of the working interest held by Nicklos Oil & Gas Company in those certain oil, gas, and mineral leases covering Plaintiffs' Properties referenced in Paragraph 50, above.

52.

Defendants own all, or substantially all, of the working interest in Plaintiffs' Leases and/or in the units in which Plaintiffs' Leases participate, covering all or substantially all of Plaintiffs' Properties.

JURISDICTION AND VENUE

53.

This Honorable Court has subject matter jurisdiction over Plaintiffs' claims pursuant to Louisiana Civil Code Articles 667, 2315, 2315.3, 2317, and 2710, *et seq.;* Louisiana Code of Civil Procedure Articles 1871, *et seq.;* La. R.S. 30:2001, *et seq.;* and La. R.S. 31:1, *et seq.*

54.

This Honorable Court has personal jurisdiction over these Defendants, who are each doing business and own real property in Pointe Coupee Parish, Louisiana, pursuant to Louisiana Code of Civil Procedure Article 6, as each Defendant is amenable to service of process pursuant to Louisiana Code of Civil Procedure Articles 1231, *et seq.* and 1261, *et seq.,* and/or La. R.S. 13:3201.

55.

Venue is proper in this Honorable Court pursuant to Louisiana Code of Civil Procedure Article 74 and La. R.S. 30:2026(A)(1), as Plaintiffs' Properties are located within this judicial district in Point Coupee Parish.

## BACKGROUND

56.

From the 1940's until the present, Defendants own or have owned interests in Plaintiffs' Leases and/or operated working interests in Plaintiffs' Leases, covering oil and gas wells located on Plaintiffs' Properties in Fordoche Field, described above in Paragraphs 1 through 30, and in other oil, gas, and mineral leases located on other lands adjacent to or near Plaintiffs' Properties.

57.

As well as being home to some Plaintiffs, Plaintiffs' Properties have been productive for many years as cattle ranches and agricultural farms.

58.

At times unknown, pursuant to, during, and as a result of their operations on Plaintiffs' Properties, Defendants and/or their agents have harmed Plaintiffs by:

(1) Improperly and illegally storing, discharging, and/or disposing of hazardous, toxic, poisonous, radioactive, dangerous, and/or unsafe waste, contaminants, pollutants, chemicals, and/or other substances (hereinafter referred to collectively as "hazardous waste and/or substances") on Plaintiffs' Properties and on lands adjacent to or near Plaintiffs' Properties;

(2) Permitting leaks and/or spills of hazardous waste and/or substances from Defendants' facilities, described below, located on Plaintiffs' Properties and on lands adjacent to or near Plaintiffs' Properties, where Defendants and/or their agents stored, discharged, and/or disposed of same; and

(3) Allowing the migration of same onto Plaintiffs' Properties and into the adjacent waterways and groundwaters;

all of which has caused contamination and pollution of Plaintiffs' Properties and the adjacent waterways and groundwaters.

59.

Defendants knew or should have known that the hazardous waste and/or substances associated with, generated, and produced as a result of oil and gas exploration and production and other activities conducted by Defendants and/or their agents - including produced water,

naturally occurring radioactive material ("NORM"), drilling fluids, and blowdown water - are highly toxic and hazardous waste and/or substances.

60.

Defendants knew or should have known that their operations would result, have resulted, and continue to result in the discharge and disposal of hazardous waste and/or substances onto Plaintiffs' Properties and on lands adjacent to or near Plaintiffs' Properties; that these hazardous waste and/or substances would migrate, have migrated, and continue to migrate to Plaintiffs' Properties and the adjacent waterways and groundwaters; and that this migration would result, has resulted, and continues to result in contamination and pollution of Plaintiffs' Properties and the adjacent waterways and groundwaters.

61.

Despite possessing knowledge of the danger to the public health and the environment posed by their operations, Defendants and/or their agents stored, discharged, and/or disposed of said hazardous waste and/or substances on and around Plaintiffs' Properties, and continue to do so.

62.

Despite possessing knowledge of the danger to the public health and the environment posed by their operations, Defendants and/or their agents have never issued any warnings to the public, including Plaintiffs, that the storage, discharge, and disposal sites might or would be contaminated and polluted, that the hazardous waste and/or substances stored, discharged, and/or disposed of might or would migrate therefrom, or that any health risks to persons, wildlife, or the environment might or would be posed as a result of such migration.

63.

Despite possessing knowledge of the danger posed by their operations to the public health and the environment, Defendants and/or their agents have failed to remediate the environmental hazards caused by Defendants' and/or their agents' operations on Plaintiffs' Properties and on lands adjacent to or near Plaintiffs' Properties, or to restore Plaintiffs' Properties to their original condition at the earliest reasonable time.

1.   Facilities for storage, discharge, and/or disposal of hazardous waste and/or
     substances created, maintained, used, and/or owned by Defendants and/or their
     agents

     *A.   Pits*

. 64.

At times unknown, Defendants and/or their agents constructed and maintained many pits

on Plaintiffs' Properties and on lands adjacent to or near Plaintiffs' Properties.

65.

Defendants and/or their agents have used and continue to use these pits for the storage,

discharge, and/or disposal of a wide range of hazardous waste and/or substances from oil and

gas production as well as from other activities, resulting in the contamination and pollution of

Plaintiffs' Properties and the adjacent waterways and groundwaters.

66.

Some of the pits were covered, ineffectually, with fly ash.

67.

The hazardous waste and/or substances stored, discharged, and/or disposed of in these

pits have leached from the pits and migrated to Plaintiffs' Properties and the adjacent waterways

and groundwaters, and continue to do so, contaminating and polluting same.

     *B.   Cracked Sumps*

68.

At times unknown, Defendants and/or their agents erected sumps on lands adjacent to or

near Plaintiffs' Properties.

69.

Defendants and/or their agents permitted and/or caused the sumps to crack, which has

caused and continues to cause leakage of the hazardous waste and/or substances contained

therein, which have migrated and continue to migrate to Plaintiffs' Properties and the adjacent

waterways and groundwaters.

70.

Plaintiffs' Properties and the adjacent waterways and groundwaters have been and

continue to be contaminated and polluted by the leakage of hazardous waste and/or substances

from these sumps, and by the migration of same.

C. *Tank Batteries*

71.

At times unknown, Defendants and/or their agents constructed and maintained many tank batteries on Plaintiffs' Properties and lands adjacent to or near Plaintiffs' Properties.

72.

Defendants and/or their agents have used and continue to use these tank batteries for the storage, disposal, and/or discharge of a wide range of hazardous waste and/or substances from oil and gas production, as well as from other activities.

73.

The hazardous waste and/or substances stored, discharged, and/or disposed of in these tank batteries have leaked and/or spilled from the tank batteries and migrated onto Plaintiffs' Properties and into the adjacent waterways and groundwaters, and continue to do so, contaminating and polluting same.

D. *Discharges of Mercury*

74.

At times unknown, Defendants and/or their agents intentionally and repeatedly discharged used mercury from their gas measuring facilities directly onto Plaintiffs' Properties.

75.

Mercury, which is recognized as a hazardous substance by the Louisiana Department of Environmental Quality ("DEQ") and the United States Environmental Protection Agency ("EPA"), remains on Plaintiffs' Properties, contaminating and polluting same.

E. *Injection Wells*

76.

Plaintiffs' Leases permit the injection only of salt water into subsurface strata through the wells located on Plaintiffs' Leases.

77.

Plaintiffs' wells are licensed by the State of Louisiana as Class II, non-hazardous injection wells, limited by law to injection of salt water. Plaintiffs' Leases contemplated compliance with all applicable laws and regulations.

78.

At times unknown, Defendants and/or their agents injected hazardous waste and/or substances into injection wells located on lands in Fordoche Field on, adjacent to, or near Plaintiffs' Properties, in violation of law.

79.

Hazardous waste and/or substances have migrated and continue to migrate onto Plaintiffs' Properties and into the adjacent waterways and groundwaters from the injection wells located on Plaintiffs' Properties and/or on lands adjacent to or near Plaintiffs' Properties.

F.      Pipelines

80.

Defendants and/or their agents have used and continue to use certain pipelines located on Plaintiffs' Properties and on lands adjacent to or near Plaintiffs' Properties, for the purpose of transporting hazardous waste and/or substances to and/or through said properties for storage, discharge, and/or disposal.

81.

Defendants' and/or their agents' used these pipelines on or near Plaintiffs' Properties for the transportation of hazardous waste and/or substances.

82.

Defendants' pipelines have leaked, at times unknown, and continue to leak, thereby discharging hazardous waste and/or substances onto Plaintiffs' Properties. Plaintiffs' Properties and the adjacent waterways and groundwaters have been and continue to be contaminated and polluted by the leakage of hazardous waste and/or substances from Defendants' pipelines.

G.      Chemicals, Drums, and Drum Rinsate.

83.

Defendants and/or their agents stored and/or disposed of hazardous chemicals, drum rinsate, and the drums used to store and/or transport hazardous waste and/or substances on Plaintiffs' properties and/or on property adjacent to or near Plaintiffs' Properties.

84.

Hazardous waste and/or substances have leaked and/or spilled from these drums onto Plaintiffs' Properties and/or have migrated onto Plaintiffs' Properties and the adjacent waterways and groundwaters, and continue to do so, contaminating and polluting same.

2.   Hazardous waste and/or substances stored, discharged, and/or disposed of by Defendants and/or their agents on Plaintiffs' Properties and on lands adjacent to or near Plaintiffs' Properties

85.

The hazardous waste and/or substances stored, discharged, and/or disposed of by Defendants and/or their agents on Plaintiffs' Properties and on lands adjacent to or near Plaintiffs' Properties include, *inter alia,* naturally occurring radioactive material (hereinafter referred to as "NORM"), produced water, drilling mud and other drilling fluids, waste compressor oils, filters, and blowdown, vacuum truck rinsate, blowdown water from cooling towers (gas plant cooling tower cleaning waste), tank bottoms (liquid and solid waste generated by crude oil and tank bottom reclaimers), reworking and recompletion fluids, used equipment lubrication oils, oil and gas service company wastes, miscellaneous hazardous solids, used hydraulic fluid waste solvents, waste in transportation pipeline-related pits, and production wastes.

86.

NORM contains, *inter alia,* radium$_{\text{ss}}$ and radium$_{\text{ss}}$. Though these radioactive substances occur naturally at the depths from which oil and gas are produced, their surface disposal or discharge creates serious contamination and health problems when not strictly controlled.

87.

"Produced water" is a hazardous brew of various hydrocarbon compounds, metals, drilling and completion fluids, salt, and radioactive substances. Studies of the chemical constituents of south Louisiana produced water have revealed that all produced water discharges contain high levels of salt (up to 193 parts per 1000, or 19.3%), volatile hydrocarbon compounds (including benzene, toluene, xylene, and ethylbenzene), Polynuclear Aromatic Hydrocarbons (including naphthalene, fluorene, and phenanthrene), trace metals (including chromium, vanadium, arsenic, barium, and zinc), radium$_{\text{sss}}$ and radium$_{\text{sss}}$. All of these

substances bioaccumulate and are acutely toxic to aquatic organisms at varying concentrations; some (such as benzene and radium$_{(s)}$) are known or suspected human carcinogens.

88.

"Drilling mud" is dangerous due to its chemical constituents, which include arsenic, heavy metals such as chromium and barium, and oil and other hydrocarbon fractions (particularly in the case of "oil based" drilling fluids). Drilling mud can also contain bactericides and acid additives. Its components have been demonstrated to be acutely toxic to aquatic organisms.

89.

"Blowdown water" is laced with chromate and other hazardous contaminants. Chromium is listed by both DEQ and EPA as a hazardous substance.

90.

Liquid leachate from the fly ash covering some of the pits on Plaintiffs' Properties and on lands adjacent to or near Plaintiffs' Properties contains hazardous waste and/or substances, such as mercury and lead.

91.

Some of the hazardous waste and/or substances discussed above, their chemical constituents, and/or contaminants contained therein are known or suspected to cause cancer and a variety of other adverse health effects in human beings, fish, and wildlife.

FRAUD

92.

Defendants' and/or their agents' storage, discharge, and/or disposal of hazardous waste and/or substances on Plaintiffs' Properties and lands adjacent to or near Plaintiffs' Properties, beginning at times unknown and continuing to date, and the contamination and pollution of Plaintiffs' Properties and the adjacent waterways and groundwaters caused thereby, resulted from and continue to result from Defendants' willful devices, practices, habits, patterns, and/or schemes of employing misrepresentations upon which Plaintiffs reasonably relied.

93.

All of these devices, practices, habits, patterns, and schemes were utilized by Defendants to deprive Plaintiffs of their rights, to cause loss to Plaintiffs, and to secure for Defendants an unjust advantage over Plaintiffs.

## DAMAGES

94.

Plaintiffs have been damaged in the following respects, as a direct, proximate, and foreseeable result of the contamination and pollution of Plaintiffs' Properties and the adjacent waterways and groundwaters caused by Defendants' and/or their agents' conduct:

(1) Contamination and pollution of Plaintiffs' Properties and the adjacent waterways and groundwaters with hazardous waste and/or substances;

(2) Diminution of the marketability and value of Plaintiffs' Properties;

(3) Preclusion of or interference with agricultural activities on Plaintiffs' Properties;

(4) Exposure of Plaintiffs' bodies to hazardous waste and/or substances that pose substantial health risks to human beings;

(5) The inconvenience and expense of medical monitoring for disease and injury attributable to exposure to the contamination and pollution, for the remainder of their lives;

(6) The inconvenience and expense of comprehensive and expedited scientific analysis of the extent and nature of the contamination and pollution on Plaintiffs' Properties, as well as the need for continued testing for same in the future;

(7) Reasonable fear of cancer and/or other disease or injury as a result of exposure to the hazardous waste and/or substances, the manifestations of which may be delayed for years or commence at any time, and the associated mental pain, anguish, distress, and depression;

(8) Mental distress, pain, and anguish resulting from the diminution in the value and unsalability of Plaintiffs' Properties;

(9) Annoyance, discomfort, and inconvenience occasioned by the deprivation of or interference with Plaintiffs' use and quiet enjoyment of Plaintiffs' Properties;

(10) Deprivation, in whole or in part, of the recreational use of the waterways in and about Fordoche Field;

(11) Contamination and pollution of Plaintiffs' water wells; and

(12) Exposure to potential liability under Louisiana laws for remediation of Plaintiffs' Properties.

## FORESEEABILITY

95.

It was reasonably foreseeable by Defendants that Plaintiffs would be harmed in the manner described above by Defendants' negligent, grossly negligent, wilful and wanton, and/or intentional storage, discharge, and/or disposal of hazardous waste and/or substances on Plaintiffs' Properties and on lands adjacent to or near Plaintiffs' Properties, and in permitting the migration of same to Plaintiffs' Properties and the adjacent waterways and groundwaters.

96.

It was reasonably foreseeable by Defendants that the hazardous waste and/or substances stored, discharged, and/or disposed of by Defendants and/or their agents on Plaintiffs' Properties would contaminate and pollute Plaintiffs' Properties and the adjacent waterways and groundwaters.

97.

It was reasonably foreseeable by Defendants that the hazardous waste and/or substances stored, discharged, and/or disposed of by Defendants and/or their agents on lands adjacent to or near Plaintiffs' Properties would migrate to Plaintiffs' Properties and the adjacent waterways and groundwaters, further contaminating and polluting same.

## DEFENDANTS' LIABILITY FOR THEIR AGENTS' ACTS, FAILURES TO ACT, AND/OR ACQUIESCENCES

98.

All Defendants are directly and vicariously liable to Plaintiffs for any act, failure to act, and/or acquiescence of or by any of Defendants' agents, which acts or failures to act have damaged Plaintiffs.

99.

Defendants, as principals, are directly and vicariously liable to Plaintiffs for any act, failure to act, and/or acquiescence to same, of any operator of Plaintiffs' Leases, including TEXACO and TEPI, which operators conducted operations on Plaintiffs' Leases, and/or on lands nearby, as agents for Defendants, and damaged Plaintiffs.

## CAUSES OF ACTION AND LIABILITY.

I.    Breach of Mineral Lease

### 100.

Mineral lessees, sub-lessees, assignees, and unit operators have, at a minimum, a confidential relationship with the mineral lessor, and have contractually implied and legally imposed duties to the lessor, including, but not limited to, the following:

(1)    Not to harm the lessor by contaminating and polluting the leased property;

(2)    To remediate any damage to the leased property caused by the actions of the lessee, at the earliest reasonable time; and

(3)    To restore property contaminated and polluted by the lessees to its original condition.

La. R.S. 31:122; La. R.S. 31:128; and *Smith v. Schuster*, 66 So.2d 430 (La. App. 2 Cir. 1953).

### 101.

Defendants, as lessees, sub-lessees, assignees, and/or unit operators, by assumption of the duty, by agreement, as working interest owners, and/or as successors in interest, owe Plaintiffs duties not to harm Plaintiffs, and to remediate and restore damage caused by Defendants and/or their agents to Plaintiffs' Properties at the earliest reasonable time.

### 102.

Defendants' and/or their agents' illegally injected hazardous waste and/or substances into wells located on or near Plaintiffs' Properties, and Defendants' and/or their agents' used pipelines on or near Plaintiffs' Properties for transporting same to and/or through and/or near Plaintiffs' Properties.

### 103.

Defendants' and/or their agents' contamination and pollution of Plaintiffs' Properties, covered by Plaintiffs' Leases, and Defendants' failure to remediate and restore same to its original condition, violate the duties owed by Defendants to Plaintiffs as mineral lessees, sublessees, and/or assignees.

### 104.

A party to a mineral lease aggrieved by violation thereof is entitled under the Louisiana Mineral Code to any appropriate relief provided by law, including cancellation or dissolution of the lease. La. R.S. 31:134.

105.

Defendants' and/or their agents' violations of Plaintiffs' Leases, contamination of Plaintiffs' Properties, and repeated failure to remediate same entitle Plaintiffs to cancellation or dissolution of Plaintiffs' Leases.

106.

In addition, Defendants are liable to Plaintiffs for damages as a result of Defendants' and/or their agents' contamination and pollution of Plaintiffs' Properties and their failure to remediate and restore same to their original condition.

107.

Defendants are further liable to Plaintiffs to restore Plaintiffs' Properties at the earliest reasonable time to their original, unpolluted condition.

2.  Breach of Lease Under the Civil Code

108.

A lessee is obligated under the Louisiana Civil Code to enjoy the thing leased as a good administrator, according to the use for which it was intended by the lease, and to return it in the same state he received it, less ordinary wear and tear. La. C.C. arts. 2710; 2719; and 2720.

109.

A lessee is liable for any waste caused by his action or inaction. La. C.C. art. 2722.

110.

A lessor may obtain dissolution of a lease if the lessee makes a use of the thing leased other than that for which it was intended, and any loss is occasioned to the lessor thereby. La. C.C. art. 2711.

111.

By contaminating and polluting Plaintiffs' Properties, Defendants and/or their agents have failed to enjoy the property leased as good administrators, and have failed to return or to maintain the leased property in its original state, less only ordinary wear and tear. Further, Defendants and/or their agents have caused waste by storing, discharging, and/or disposing of hazardous waste and/or substances on Plaintiffs' Properties and on lands adjacent to or near Plaintiffs' Properties, and by failing to remediate same.

112.

In storing, discharging, and/or disposing of hazardous waste and/or substances on Plaintiffs' Properties, Defendants and/or their agents intentionally used the leased premises in a manner inconsistent with the use contemplated by the parties at the time they confected Plaintiffs' Leases.

113.

Defendants' and/or their agents' use of Plaintiffs' Properties for purposes other than that intended by Plaintiffs' Leases entitles Plaintiffs to cancellation or dissolution of Plaintiffs' Leases.

114.

In addition, Defendants are liable to Plaintiffs for damages as a result of their failure to enjoy Plaintiffs' Properties as good administrators, their failure to return Plaintiffs' Properties to their condition at the outset of Plaintiffs' Leases, their usage of the leased premises for a purpose other than that intended by Plaintiffs' Leases, and the contamination and pollution of Plaintiffs' Properties. La. C.C. arts. 2710; 2711; 2719; and 2722.

3.   Rescission of Plaintiffs' Leases

115.

The consent of a party to a contract is vitiated by error or fraud concerning a cause without which that party would not have entered into the contract, when that cause was known or should have been known to the other party. La. C.C. arts. 1948; 1949, *et seq.*; and 1953, *et seq.*.

116.

A party whose consent to a contract is vitiated by error is entitled to rescission of the contract and/or damages. La. C.C. art. 1948; and 1949, *et seq.*

117.

A party whose consent to a contract is vitiated by fraud is entitled to rescission of the contract, damages, and attorney's fees. La. C.C. art. 1948; and 1953, *et seq.*

118.

Plaintiffs' consent to Plaintiffs' Leases is vitiated by Defendants' fraudulent misrepresentation as to the substances injected into the injection wells and pipelines on or near

Plaintiffs' Leases, as Defendants assured Plaintiffs that only salt water would be injected into or transported through such wells and pipelines.

119.

Plaintiffs' consent is further vitiated by error, in that Plaintiffs were ignorant of the true, hazardous nature of the substances stored, discharged, and/or disposed of by Defendants and/or their agents on Plaintiffs' Properties. Defendants knew or should have known that Plaintiffs were unaware that Defendants intended to store, discharge, and/or dispose of hazardous waste and/or substances on or near Plaintiffs' Properties, and that Plaintiffs would not have agreed to be bound by Plaintiffs' Leases had they known that Defendants intended to do so.

120.

Plaintiffs' Leases are null and void as of the date of execution as result of Defendants' fraud and Plaintiffs' error, induced by Defendants, and Plaintiffs are entitled to cancellation of Plaintiffs' Leases as a result.

4.   Tort

121.

Every person is liable for any damage that he causes to another person as a result of a negligent, wilful and wanton, or intentional breach of a duty of care to such other person. La. C.C. art. 2315.

122.

Defendants have a legal duty to conduct their operations reasonably and in such a manner that Plaintiffs are not damaged thereby. La. C.C. art. 2315.

123.

Defendants have a legal duty to conduct their operations reasonably and in such a manner that no trespass to, or invasion of, Plaintiffs' Properties is caused thereby. La. C.C. art. 2315.

124.

Defendants have a legal duty to act affirmatively to protect Plaintiffs from harm caused by Defendants' and/or their agents' actions. La. C.C. art. 2315.

125.

Defendants have a legal duty to warn Plaintiffs and others of harm and risks of harm created by Defendants' and/or their agents' actions. La. C.C. art. 2315.

126.

At times unknown, Defendants' and/or their agents acted negligently, with gross negligence, willfully and wantonly, and/or intentionally in storing, discharging, and/or disposing of hazardous waste and/or substances onto Plaintiffs' Properties and on lands adjacent to or near Plaintiffs' Properties, and permitting same to migrate to Plaintiffs' Properties and the adjacent waterways and groundwaters, contaminating and polluting same.

127.

At times unknown, Defendants and/or their agents acted negligently, grossly negligently, willfully and wantonly, and/or intentionally in failing to warn Plaintiffs of the human health hazards and the harm to property, wildlife, aquatic life, and the environment attributable to the contamination and pollution caused by Defendants and/or their agents, and in failing to remediate Plaintiffs' Properties and protect Plaintiffs from same.

128.

Defendants knew or should have known of the discharge, disposal, and migration of hazardous waste and/or substances onto Plaintiffs' Properties and the damage that would result therefrom.

129.

Defendants are liable to Plaintiffs as a result of their negligence, gross negligence, willful and wanton conduct, and/or intentional behavior in contaminating and polluting Plaintiffs' Properties with hazardous waste and/or substances; failing to remediate same; and failing to warn Plaintiffs of the dangers posed by same.

5.    Strict Liability

130.

Every person is strictly liable for any damage caused to another person by things in his custody.  La. C.C. art. 2317.

131.

Plaintiffs have been damaged by hazardous waste and/or substances stored, discharged, and/or disposed of in the wells, pits, pipelines, and other facilities, equipment, and works owned and/or operated by Defendants and/or their agents on Plaintiffs' Properties and on lands adjacent

to or near Plaintiffs' Properties, at times unknown through the present, all of which have been and continue to be under the custody of Defendants and/or their agents.

132.

Defendants are strictly liable to Plaintiffs as a result of contamination and pollution of Plaintiffs' Properties by hazardous waste and/or substances stored, discharged, and/or disposed of by Defendants and/or their agents in wells, sumps, pits, pipelines, and other facilities, equipment, and works within Defendants' custody, all as described above.

6.     Creation and Maintenance of a Nuisance

133.

A landowner or lessee may not use his property in such a manner as to damage a neighbor or to deprive a neighbor of the use and enjoyment of his own property. La. C.C. art. 667, *et seq.*

134.

Defendants have a legal duty to conduct their operations so as not to damage Plaintiffs or Plaintiffs' Properties materially or significantly, and so as not to deprive Plaintiffs of the use and enjoyment of Plaintiffs' Properties.  La. C.C. art. 667, *et seq.*

135.

Defendants' and/or their agents' use of pits, sumps, injection wells, pipelines, and other equipment and facilities on Plaintiffs' Properties and on lands adjacent to or near Plaintiffs' Properties to store, discharge, and/or dispose of hazardous waste and/or substances, and the contamination and pollution of Plaintiffs' Properties and the adjacent waterways and groundwaters that has resulted and continues to result therefrom, constitute an ongoing trespass onto and violation of Plaintiffs' pre-existing property rights and riparian water rights, all to the injury of Plaintiffs.

136.

Defendants are liable to Plaintiffs as a result of their continuous use of Plaintiffs' Properties and adjacent property in a manner that has caused and continues to cause damage to Plaintiffs' Properties and interference with Plaintiffs' use and enjoyment of Plaintiffs' Properties.

7.    Liability Pursuant to the Louisiana Environmental Quality Act

137.

Pursuant to the Louisiana Environmental Quality Act ("LEQA"), La. R.S. 30:2001, *et seq.*, particularly La. R.S. 30:2026, any person may commence a civil action against any person alleged to be in violation of LEQA or regulations established by DEQ pursuant to LEQA, to obtain prohibitory and mandatory injunctive relief, actual damages, and costs of court including reasonable attorneys and expert witness fees.

138.

Defendants and/or their agents have violated and continue to violate LEQA and regulations promulgated pursuant thereto by their contamination and pollution of Plaintiffs' Properties, the adjacent waterways and groundwaters, and the environment with hazardous waste and/or substances.

139.

Defendants' and/or their agents' contamination and pollution violated and continues to violate LEQA and/or regulations promulgated pursuant to LEQA by:

(1)    Failing to obtain the permits and/or licenses required by and/or pursuant to LEQA for hazardous waste and/or substance storage, transportation, and disposal facilities;

(2)    Failing to meet the standards required for hazardous waste and/or substance storage, transportation, and disposal facilities, as established by and/or pursuant to LEQA;

(3)    Failing to monitor the hazardous waste and/or substances stored, discharged, and disposed of by Defendants and/or their agents on Plaintiffs' Properties and on lands adjacent to or near Plaintiffs' Properties, and/or their failure to report same to DEQ, according to the standards established by and/or pursuant to LEQA; and

(4)    Failing to remediate the hazardous waste and/or substances stored, discharged, and disposed of by Defendants and/or their agents on Plaintiffs' Properties and on lands adjacent to or near Plaintiffs' Properties, according to the standards established by and/or pursuant to LEQA.

140.

Defendants are liable to Plaintiffs as a result of their violations of LEQA, which violations have harmed and continue to harm Plaintiffs, Plaintiffs' Properties, the adjacent waterways and groundwaters, and the environment.

**141.**

As required by La. R.S. 30:2026(B), Plaintiffs furnished written notice of the violation of LEQA to all Defendants and DEQ, by Certified Mail, Return Receipt Requested, on February 16, 1996, more than thirty (30) days prior to initiation of this lawsuit.

8.    Liability for Exemplary Damages

**142.**

Exemplary damages may be awarded with respect to injuries caused by wanton and reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances.  La. C.C. art. 2315.3.

**143.**

Defendants' and/or their agents' actions and/or inactions, at times unknown that continue to the present, constitute wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances, particularly in:

(1)    Knowingly contaminating and polluting Plaintiffs' Properties and the adjacent waterways and groundwaters by storing, discharging, and/or disposing of hazardous waste and/or substances on Plaintiffs' Properties;

(2)    Knowingly contaminating and polluting Plaintiffs' Properties and the adjacent waterways and groundwaters by allowing the contamination and pollution of Plaintiffs' Properties and the adjacent waterways and groundwaters by migration of the hazardous waste and/or substances stored, discharged, and/or disposed of by Defendants and/or their agents on lands adjacent to or near Plaintiffs' Properties; and

(3)    Failing to properly maintain their facilities so as to avoid such discharge, disposal, and migration.

**144.**

Defendants' and/or their agents' wanton and reckless actions and/or inactions described above, endangered and continue to endanger the public health and safety.

**145.**

Defendants are liable to Plaintiffs for exemplary damages as a result of their wanton and reckless disregard for public safety in the handling and storage of the hazardous waste and/or substances stored, discharged, and/or disposed of on Plaintiffs' Properties and on lands adjacent to or near Plaintiffs' Properties, which has damaged Plaintiffs as described above.

9. .   Liability for Declaratory Relief

146.

Any interested person may commence an action for a declaratory judgment to declare rights, status, and other legal relations when such a judgment would terminate a controversy or remove an uncertainty. La. C.C.P. art. 1871, *et seq.*

147.

Plaintiffs are entitled to Declaratory Judgment, declaring that Plaintiffs have satisfied certain specific prerequisites of LEQA. Declaratory Judgment as to these issues would remove considerable uncertainty, and would facilitate orderly and efficient trial on the merits of Plaintiffs' claims.

## *RES IPSA LOQUITUR*

148.

The doctrine of *res ipsa loquitur* permits the inference that the defendant has acted negligently when the facts indicate that the defendant's negligence is the probable cause of the injury to the plaintiff, in the absence of other equally probable explanations offered by credible witnesses. *Res ipsa loquitur* shifts the burden of proof to the defendant to prove that it has not been negligent. *Cangelosi v. Our Lady of the Lake Regional Medical Center,* 564 So.2d 654 (La. 1989).

149.

*Res ipsa loquitur* applies when:

(1)   The circumstances surrounding the plaintiff's injury are so unusual that, in the absence of other pertinent evidence, an inference of negligence on the part of the defendant is warranted;

(2)   The defendant had exclusive control over the thing causing the injury; and

(3)   The circumstances are such that the only reasonable and fair conclusion is that the injury was due to a breach of duty on the part of the defendant.

*Otis v. Spott Elevator Co.,* 601 So.2d 1355 (La. 1992).

150.

Contamination and pollution of Plaintiffs' Properties and the adjacent waterways and groundwaters with hazardous waste and/or substances would not have occurred in the absence of Defendants' and/or their agents' negligence.

151.

Defendants and/or their agents had exclusive control over the pits, sumps, injection wells, pipelines, and other equipment and facilities in which the hazardous waste and/or substances were stored, generated, discharged, and/or disposed of by Defendants and/or their agents, and from which same either directly polluted or migrated to Plaintiffs' Properties and the adjacent waterways.

152.

The circumstances of the contamination and pollution of Plaintiffs' Properties and the adjacent waterways and groundwaters are such that the only reasonable and fair conclusion is that the contamination and pollution are attributable to a breach of duty on Defendants' and/or their agents' part.

153.

Contamination and pollution by hazardous waste and/or substances do not normally occur in the absence of negligence.

154.

Plaintiffs affirmatively allege *res ipsa loquitur*, and aver that this doctrine gives rise to an inference of negligence on Defendants' and/or their agents' part such that the burden of proof shifts to Defendants to prove that they have not been negligent.

## REMEDIES

1. Nullification of Plaintiffs' Leases

Plaintiffs are entitled to have Plaintiffs' Leases declared by this Honorable Court to be null and void, as a result of the vitiation of Plaintiffs' consent to Plaintiffs' Leases in light of the parties' intentions in entering into Plaintiffs' Leases, and the operations conducted pursuant thereto by Defendants.

2.   Dissolution of Plaintiffs' Leases

155.

Plaintiffs are entitled to have Plaintiffs' Leases cancelled or dissolved, as a result of Defendants' and/or their agents' repeated and intentional storage, discharge, and/or disposal of hazardous waste and/or substances on Plaintiffs' Properties, which constitutes usage of the property not in conformity with Plaintiffs' Leases, and as a result of Defendants' breaches of their duties not to harm Plaintiffs, to remediate any damage to Plaintiffs' Properties caused by Defendants' and/or their agents' actions, at the earliest reasonable time, and to restore Plaintiffs' Properties, contaminated and polluted by Defendants and/or their agents, to their original condition, at the earliest reasonable time.

156.

Plaintiffs are also entitled to the return of the value of all hydrocarbon production from Plaintiffs' Properties from the effective date of dissolution or termination of Plaintiffs' Leases, to date, less royalties paid, plus legal interest on that sum from date due until paid.

3.   Damages

157.

Plaintiffs are entitled to an award of damages against Defendants as a result of the following injuries, which are a direct and proximate result of the aforesaid acts and omissions of Defendants, at times unknown:

    (1)   Contamination and pollution of Plaintiffs' Properties and the adjacent waterways and groundwaters with hazardous waste and/or substances;

    (2)   Diminution of the marketability and value of Plaintiffs' Properties;

    (3)   Preclusion of or interference with agricultural activities on Plaintiffs' Properties;

    (4)   Exposure of Plaintiffs' bodies to hazardous waste and/or substances that pose substantial health risks to human beings;

    (5)   The inconvenience and expense of medical monitoring for disease and injury attributable to exposure to the contamination and pollution, for the remainder of their lives;

    (6)   The inconvenience and expense of comprehensive and expedited scientific analysis of the extent and nature of the contamination and pollution on Plaintiffs' Properties, as well as the need for continued testing for same in the future;

(7) Reasonable fear of cancer and/or other disease or injury as a result of exposure to the hazardous waste and/or substances, the manifestations of which may be delayed for years or commence at any time, and the associated mental pain, anguish, distress, and depression;

(8) Mental distress, pain, and anguish resulting from the diminution in the value and unsalability of Plaintiffs' Properties;

(9) Annoyance, discomfort, and inconvenience occasioned by the deprivation of or interference with Plaintiffs' use and quiet enjoyment of Plaintiffs' Properties;

(10) Deprivation, in whole or in part, of the recreational use of the waterways in and about Plaintiffs' Properties;

(11) Contamination and pollution of Plaintiffs' water wells; and

(12) Exposure to potential liability under Louisiana laws for remediation of Plaintiffs' Properties.

### 158.

Defendants are indebted unto Plaintiffs, jointly, severally, and *in solido*, for all damages and/or performances to which Plaintiffs are entitled.

4.    **Exemplary Damages**

### 159.

Defendants are liable to Plaintiffs for exemplary damages as a result of their wanton and reckless disregard for the public safety in the handling and storage of the hazardous waste and/or substances stored, discharged, and/or disposed of on Plaintiffs' Properties and on lands adjacent to or near Plaintiffs' Properties.

5.    **Prohibitory Injunction**

### 160.

Plaintiffs are entitled to injunctive relief ordering Defendants and/or their agents to refrain from further storage, discharge, or disposal of hazardous waste and/or substances on Plaintiffs' Properties or other lands adjacent to or near Plaintiffs' Properties, or into the adjacent waterways and groundwaters.

6. Restoration, Remediation, and Abatement

161.

Plaintiffs are entitled to a Judgment ordering Defendants to restore Plaintiffs' Properties to their original condition, to remediate the hazardous waste and/or substances stored, discharged, and/or disposed of by Defendants and/or their agents on Plaintiffs' Properties, and/or to abate the nuisance caused thereby.

7. Declaratory Relief

162.

Plaintiffs are entitled to a Declaratory Judgment declaring that:

(1) The contamination and pollution found on Plaintiffs' Properties and on lands adjacent to or near Plaintiffs' Properties constitute hazardous waste and/or substances within the meaning of La. R.S. 30:2001, *et seq.* and the regulations established pursuant thereto;

(2) The hazardous waste and/or substances found on Plaintiffs' Properties and on lands adjacent to or near Plaintiffs' Properties were discharged and/or disposed of within the meaning of La. R.S. 30:2001, *et seq.* and the regulations established pursuant thereto;

(3) Plaintiffs' Properties and other lands adjacent to or near Plaintiffs' Properties constitute a facility, within the meaning of La. R.S. 30:2001, *et seq.* and the regulations established pursuant thereto;

(4) Defendants and/or their agents were dischargers, disposers, transporters, and/or generators of the hazardous waste and/or substances on Plaintiffs' Properties and lands adjacent to or near Plaintiffs' Properties, and/or operators of Plaintiffs' Properties during and/or after the discharge, disposal, transportation, and/or generation of hazardous waste and/or substances on Plaintiffs' Properties and lands adjacent to or near Plaintiffs' Properties, within the meaning of La. R.S. 30:2001, *et seq.* and the regulations established pursuant thereto;

(5) Defendants and/or their agents stored, discharged, and/or disposed of hazardous waste and/or substances on Plaintiffs' Properties and on lands adjacent to or near Plaintiffs' Properties without obtaining a permit to do so, in violation of La. R.S. 30:2001, *et seq.* and the regulations established pursuant thereto; and

(6) Defendants and/or their agents stored, discharged, and/or disposed of hazardous waste and/or substances on Plaintiffs' Properties and on lands adjacent to or near Plaintiffs' Properties without meeting the standards established for the conduct of such activities, in violation of La. R.S. 30:2001 *et seq.* and the regulations established pursuant thereto.

8.    Costs of Litigation

163.

Plaintiffs are entitled to a Judgment awarding them all costs of this litigation incurred by them, including Plaintiffs' attorneys' and expert witness fees. La. R.S. 30:2026(A)(3); La. R.S. 31:134; La. C.C.P. art. 1920; and La. C.C. art. 1958.

9.    Interest

164.

Plaintiffs are entitled to a Judgment awarding them legal interest on any amounts awarded to them, from the date of judicial demand, or from the date due, until paid. La. C.C.P. art. 1921; and La. R.S. 13:4203.

## CONTRA NON VALENTUM

165.

The doctrine of *contra non valentun* tolls prescription during any period of time during which the possessor of a cause of action is precluded from learning of or acting upon his cause of action as a result of actions of the person whom he alleges to have damaged him. *Rajnowski v. St. Patrick's Hospital*, 564 So.2d 671 (La. 1990).

166.

Defendants' affirmative acts of fraudulent concealment and misrepresentation in connection with their storage, discharge, and/or disposal, at times unknown but continuing to the present, of hazardous waste and/or substances onto Plaintiffs' Leases and into the waterways and groundwaters adjacent thereto include, but are not limited to, concealment of: (1) the fact that they stored, discharged, and/or disposed of hazardous waste and/or substances on Plaintiffs' Properties and on lands adjacent to or near Plaintiffs' Properties, (2) the hazardous nature of these substances, and (3) the fact that these hazardous substances were migrating to Plaintiffs' Properties and the adjacent waterways; and misrepresentation that: (1) Defendants were prudently performing their duties as Plaintiffs' mineral lessees, (2) Defendants were performing their duties as reasonably prudent operators, and (3) Defendants were complying with all requirements of law and all express and implied terms of their mineral leases with Plaintiffs.

167.

Plaintiffs affirmatively allege the doctrine of *contra non valentum* and aver that Defendants, through concealment and misrepresentation, have effectively prevented Plaintiffs from availing themselves of their causes of action against Defendants, and any delay in filing this action was not the result of Plaintiffs' mere ignorance, nor their mere passivity or lack of reasonable diligence, and not as a result of their own negligence.

## INTERPRETATION

168.

Plaintiffs' Leases were drafted and/or provided by Defendants and any omission or ambiguity therein must be strictly interpreted against Defendants and in favor of Plaintiffs. *Bond v. Allemand*, 632 So.2d 326 (La. App. 1 Cir. 1993), writ den., 637 So.2d 468 (La. 1994).

## JURY TRIAL

169.

Defendants owe Plaintiffs damages in excess of the specific amount necessary to establish Plaintiffs' right to trial by jury. Therefore, Plaintiffs are entitled to and hereby demand that this matter be tried to a jury.

## BOND

170.

The personal bond required by La. R.S. 30:2029 in all actions filed as provided in La. R.S. 30:2026 is attached to this Petition for Cancellation of Mineral Leases for Active Breach Thereof, and for Prohibitory and Mandatory Injunctive Relief, Damages, Penalties, Exemplary Damages, and Attorney's Fees for Contamination of the Surface Estate and the Environment.

## PRAYER

WHEREFORE, THE PREMISES HAVING BEEN CONSIDERED, Plaintiffs pray that Defendants be cited to appear and answer herein, and that after all due proceedings are had, there be final Judgment on the merits in favor of Plaintiffs and against Defendants, individually, jointly, severally, and *in solido,* awarding the following:

I.     Declaratory Judgment declaring that:

    (1)     The contamination and pollution found on Plaintiffs' Properties and on lands adjacent to or near Plaintiffs' Properties constitute hazardous waste and/or substances within the meaning of La. R.S. 30:2001, *et seq.* and the regulations established pursuant thereto;

    (2)     The hazardous waste and/or substances found on Plaintiffs' Properties and on lands adjacent to or near Plaintiffs' Properties were discharged and/or disposed of within the meaning of La. R.S. 30:2001, *et seq.* and the regulations established pursuant thereto;

    (3)     Plaintiffs' Properties and other lands adjacent to or near Plaintiffs' Properties constitute a facility, within the meaning of La. R.S. 30:2001; *et seq.* and the regulations established pursuant thereto;

    (4)     Defendants and/or their agents were dischargers, disposers, transporter, and/or generators of the hazardous waste and/or substances on Plaintiffs' Properties and lands adjacent to or near Plaintiffs' Properties, and/or operators of Plaintiffs' Properties during and/or after the discharge, disposal, transportation, and/or generation of hazardous waste and/or substances on Plaintiffs' Properties and lands adjacent to or near Plaintiffs' Properties, within the meaning of La. R.S. 30:2001, *et seq.* and the regulations established pursuant thereto;

    (5)     Defendants and/or their agents stored, discharged, and/or disposed of hazardous waste and/or substances on Plaintiffs' Properties and on lands adjacent to or near Plaintiffs' Properties without obtaining a permit to do so, in violation of La. R.S. 30:2001, *et seq.* and the regulations established pursuant thereto; and

    (6)     Defendants and/or their agents stored, discharged, and/or disposed of hazardous waste and/or substances on Plaintiffs' Properties and on lands adjacent to or near Plaintiffs' Properties without meeting the standards established for the conduct of such activities, in violation of La. R.S. 30:2001 *et seq.* and the regulations established pursuant thereto;

II.     Prohibitory injunctive relief proscribing further contamination and pollution of Plaintiffs' Properties and the adjacent waterways by Defendants and/or their agents;

III.     All costs and expenses necessary to remediate the contamination already present on Plaintiffs' Properties, and to restore Plaintiffs' Properties to their original condition, and to abate the nuisance created by their storage, discharge, and disposal of hazardous waste and/or substances;

IV.     Nullification, dissolution, and/or cancellation of Plaintiffs' Leases, and the value of all hydrocarbon production from Plaintiffs' Leases from the effective date of nullification, dissolution, or termination of Plaintiffs' Leases, to date, less royalties paid, plus legal interest on that sum from date due until paid;

V.     Damages incurred by Plaintiffs, in an amount to be proven at trial, for each of the following categories:

    (1)     Contamination and pollution of Plaintiffs' Properties and the adjacent waterways and groundwaters with hazardous waste and/or substances;

    (2)     Diminution of the marketability and value of Plaintiffs' Properties;

(3)   Preclusion of or interference with agricultural and other commercial activities on Plaintiffs' Properties;

(4)   Exposure of Plaintiffs' bodies to hazardous waste and/or substances that pose substantial health risks to human beings;

(5)   The inconvenience and expense of medical monitoring for disease and injury attributable to exposure to the contamination and pollution, for the remainder of their lives;

(6)   The inconvenience and expense of comprehensive and expedited scientific analysis of the extent and nature of the contamination and pollution on Plaintiffs' Properties, as well as the need for continued testing for same in the future;

(7)   Reasonable fear of cancer and/or other disease or injury as a result of exposure to the hazardous waste and/or substances, the manifestations of which may be delayed for years or commence at any time, and the associated mental pain, anguish, distress, and depression;

(8)   Mental distress, pain, and anguish resulting from the diminution in the value and unsalability of Plaintiffs' Properties;

(9)   Annoyance, discomfort, and inconvenience occasioned by the deprivation of or interference with Plaintiffs' use and quiet enjoyment of Plaintiffs' Properties;

(10)  Deprivation, in whole or in part, of the recreational use of the waterways in and about Fordoche Field;

(11)  Contamination and pollution of Plaintiffs' water wells;

(12)  Exposure to potential liability under Louisiana and federal environmental laws for remediation of Plaintiffs' Properties; and

(13)  All other actual damages suffered by Plaintiffs to be proven at trial;

VI.   Exemplary damages as authorized by the laws of the State of Louisiana;

VII.  All costs of court, including reasonable attorneys and expert witness fees;

VIII. Legal interest on all amounts awarded from the date of judicial demand, or from date due, until paid;

IX.   Issuance of Notice of Judgment and Notice of Trial; and

X.    All other general, statutory, jurisprudential, and equitable relief to which
      Plaintiffs may be entitled.

                            Respectfully submitted:

                            ANDRE' F. TOCE & ASSOCIATES
                            ANDRE' F. TOCE, Bar Roll No. 16769
                            Suite 601
                            Jefferson Towers
                            556 Jefferson Street
                            Lafayette, Louisiana 70501
                            Telephone:  (318) 233-6818


                            OATS & HUDSON
                            WILLIAM M. HUDSON, III, Bar Roll No. 1970
                            Suite 400
                            Gordon Square
                            100 East Vermilion Street
                            Lafayette, Louisiana 70501
                            Telephone:  (318) 233-1100


                            By:  _____
                                 Attorneys for Plaintiffs

*Page 38 of 40 pages*

PLEASE SERVE:

TEXACO, INC.

Through its registered agent for service of process:
Prentice Hall
Suite 811
203 Carondolet Street
New Orleans, Louisiana 70130

TEXACO EXPLORATION AND PRODUCTION, INC.

Through its registered agent for service of process:
Prentice Hall
Suite 811
203 Carondolet Street
New Orleans, Louisiana 70130

THE BURKWALL CORPORATION,

Through its agent, Mr. Ronnie J. Theriot
Southern Oaks Golf Club
1000 Bayou Black Drive
Houma, Louisiana 70360

RONNIE J. THERIOT, As
Successor In Interest to the
THE BURKWALL CORPORATION,
Southern Oaks Golf Club
1000 Bayou Black Drive
Houma, Louisiana 70360

THE FOLLOWING DEFENDANTS WERE SERVED BY PLAINTIFFS BY CERTIFIED
MAIL, PURSUANT TO AGREEMENT BETWEEN COUNSEL:

AMERICAN EXPLORATION COMPANY,
Through its attorney of record:
Mr. Timothy Eagan, Esq.
Gordon, Arala, McCollam & Duplantis
40th Floor
201 St. Charles Avenue
New Orleans, Louisiana 70170-4000

ATTEST A TRUE COPY
4-16-76
DATE FILED 6-16-96
_____
CLERK OF COURT
POINTE COUPEE PARISH
NEW ROADS, LOUISIANA

HELENE ANTOINETTE ANDRAU SIEGLER,
WILLIAM E. ANDRAU,
BARBARA ANDRAU PECK POWELL,
Through their attorney of record:
Mr. Randall C. Songy, Esq.
Onebane, Donohoe, Bernard, Torian,
  Diaz, McNamara & Abell
Suite 600 Versailles Centre'
102 Versailles Boulevard
Lafayette, Louisiana 70502-3507

18TH JUDICIAL DISTRICT COURT
FOR THE PARISH OF POINT COUPEE

STATE OF LOUISIANA

DOCKET NO. 30,718                                         DIVISION A

KATHERINE G. ORILLION, ET AL

VERSUS

TEXACO, INC., ET AL

FILED:_____

DEPUTY CLERK

### FIRST AMENDED PETITION

NOW INTO COURT, through undersigned counsel, come Petitioners,
KATHERINE G. ORILLION; JOSEPH LAYNE ORILLION; JOYCE GREEN KISSNER;
JAMES E. KISSNER; JOHN W. GREEN, III; JULIE K. SALLES; DEBORAH
DUPLANTIS; DR. MAURICE J. DUPLANTIS; FAYE CHAUVIN MOORE; SIDNEY
THOMAS CHAUVIN; SUZETTE CHAUVIN LOWE; DAN SETTOON; ERTITH G. DOBBS;
LAWRENCE NELL CHAUVIN DEVERS; JUANITA H. CHAUVIN MCARTY; GEORGE
LOWELL EMBREY; HARRY EUGENE AUSTIN CHAUVIN; NELL IRENE CHAUVIN;
WALTON A. CHAUVIN; JOHNNIE BELLE CHAUVIN FLYNN; LORETTA A. SPAHT;
CARLOS G. SPAHT; LUCILLE A. COENEN; MARCILE DOCKREY WORSHAM; HAZEL
WORSHAM GREGOIRE; JOY LYNN KILROY; DONALD K. MORGAN; DAPHNE DRUMM;
CLARK F. WORSHAM; PATRICK O. BEATTY; MARJORIE WORSHAM VAVASSEUR;
and GLORIA BROWN SEELY (hereinafter "Plaintiffs"), who respectfully
amend their original petition in this matter as follows:

I.

By amending the original Petition to add the following
paragraphs:

### THE TEXACO, INC. BANKRUPTCY

171.

On April 12, 1987, Defendant, TEXACO, INC., filed a petition
under 11 U.S.C. Chapter 11 (the "Bankruptcy Code"), for the
Southern District of New York, Case Number 87B20142, 87B20143 and
87B20144.

172.

Upon information and belief, the Bankruptcy Court for the
Southern District of New York confirmed Texaco, Inc.'s Plan of
Reorganization on March 23, 1988. Petitioners assert that Texaco,
Inc. is responsible to Petitioners in the same manner as the other

defendants for the various State causes of actions asserted in the
original petition. However, it is Petitioners' intention to abide
in all aspects to the Plan of Reorganization issued by the
Bankruptcy Court for the Southern District of New York.
Petitioners, therefore, assert all rights and causes of actions
against Texaco, Inc. which are not precluded by the Plan of
Reorganization and which were not discharged in bankruptcy as
interpreted in In re Texaco Inc., 182 B.R. 937 (Bkrtcy.S.D.N.Y.
1995).

174.

Plaintiffs reallege all of the claims stated in their original
petition, regardless of the date on which the pollution was
discharged, against all defendants other than TEXACO, INC.

II.

Plaintiffs reassert and reallege all of the allegations and
demands contained in the original Petition as amended herein.

WHEREFORE, THE PREMISES HAVING BEEN CONSIDERED, Plaintiffs
pray that Defendants be cited to appear and answer herein and that
after all due proceedings had, there be final Judgment on the
merits in favor of Plaintiffs and against Defendants, individually,
jointly, severally, and in solido.

Respectfully submitted,

Scott R. Bickford (1165)
John R. Martzell (9013)
Duggan F. Ellis (17553)
MARTZELL & BICKFORD
338 Lafayette Street
New Orleans, LA 70130
504/581-9065
504/581-7635 (Fax)

William M. Hudson, III (1970)
OATS & HUDSON
Suite 400, Gordon Square
100 East Vermilion St.
Lafayette, Louisiana 70501
318/233-1100
318/233-1178 (Fax)

| | |
|---|---|
| HELENE ANTOINETTE ANDRAU SIEGLER AND BARBARA ANDRAU PECK POWELL | DOCKET NO. _____ |
| VERSUS | 19TH JUDICIAL DISTRICT COURT |
| ACE AMERICAN INSURANCE COMPANY, INSURANCE COMPANY OF NORTH AMERICA, AMERICAN MOTORISTS INSURANCE COMPANY, AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY, LUMBERMENS MUTUAL CASUALTY COMPANY, THE TRAVELERS INSURANCE COMPANY, AND THE TRAVELERS INDEMNITY COMPANY | PARISH OF EAST BATON ROUGE STATE OF LOUISIANA |

## PLAINTIFFS' FIRST SET OF INTERROGATORIES, REQUESTS FOR ADMISSIONS, AND REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO ALL DEFENDANTS

TO: American Motorists Insurance Company
   through its registered agent for service of process:
   The Honorable Jay Dardenne
   Louisiana Secretary of State
   8585 Archives Avenue
   Baton Rouge, Louisiana

   American Manufacturers Mutual Insurance Company
   through its registered agent for service of process:
   The Honorable Jay Dardenne
   Louisiana Secretary of State
   8585 Archives Avenue
   Baton Rouge, Louisiana

   Lumbermens Mutual Casualty Company
   through its registered agent for service of process:
   The Honorable Jay Dardenne
   Louisiana Secretary of State
   8585 Archives Avenue
   Baton Rouge, Louisiana

   The Travelers Insurance Company
   through its registered agent for service of process:
   The Honorable Jay Dardenne
   Louisiana Secretary of State
   8585 Archives Avenue
   Baton Rouge, Louisiana

   The Travelers Indemnity Company
   through its registered agent for service of process:
   The Honorable Jay Dardenne
   Louisiana Secretary of State
   8585 Archives Avenue
   Baton Rouge, Louisiana

3197593.1

Insurance Company of North America
through its registered agent for service of process:
The Honorable Jay Dardenne
Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge, Louisiana

ACE American Insurance Company
through its registered agent for service of process:
The Honorable Jay Dardenne
Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge, Louisiana

NOW COME Plaintiffs, by and through undersigned counsel, and in accordance with

Articles 1457, 1458, of the Louisiana Code of Civil Procedure, submit the following Interrogatories,

Requests for Admissions, and Requests for Production of Documents and Things to be answered by

Defendants, in writing and under oath, within the delays provided by law.

## INSTRUCTIONS

A. If any requested information cannot be provided in full, provide it to the extent possible, identify the information withheld, and set forth the reasons it has been withheld.

B. You are requested to provide all information in Your possession, custody, or control, regardless of whether such information is possessed directly by You, Your officers, directors, employees, agents, brokers, representatives, subsidiaries, affiliates, attorneys, accountants, or any other person acting or purporting to act on Your behalf or under Your direction or control.

C. If You claim that any requested information is protected from discovery by a privilege, identify the information with particularity, including the date, the author, the addressee, and any other person who received the information as well as the grounds of the privilege asserted.

D. You are under a continuing duty to furnish additional and supplemental responses and documents in accordance with C.C.P. art. 1428.

## DEFINITIONS

The following definitions apply to the foregoing instructions:

A. "You" or "Your" means the entities to which these requests are directed and each of their predecessors in interest, subsidiaries, affiliates, divisions, present or former officers, directors, employees, agents, representatives, brokers, attorneys, accountants, and any and all persons or entities acting on or purporting to act on their behalf or under their direction or control.

B. "Texaco" means Texaco, Inc., Texaco Exploration and Production, Inc., and Chevron USA Inc., which has appeared in the underlying claim as successor in interest to Texaco, Inc. and Texaco Exploration and Production, Inc.

C. "Andrau" means Plaintiffs Helene Antoinette Andrau Siegler and Barbara Andrau Peck Powell in the above-captioned matter;

D. "Document" or "documents" means and includes, without limitations, all writings; records; files; correspondences; reports; memoranda; calendars; diaries; minutes;

electronic messages; voicemail; e-mail; telephone message records or logs; computer and network activity logs; hard drives; backup data; removable computer storage media such as tapes, disks, and cards; printouts; document image files; web pages; databases; spreadsheets; software; books; ledgers; journals; orders; invoices; bills; vouchers; checks; statements; worksheets; summaries; compilations; computations; charts; diagrams; graphic presentations; drawings; films; charts; digital or chemical process photographs; video; phonographic, tape, or digital records or transcripts thereof; drafts; jottings; and notes. The term "document" also means a copy where the original is not in Your possession, custody, or control, and every copy of a document where such copy is not an identical duplicate of the original.

E.  "Identify" means:

    a.  When used in reference to a natural person, to provide his or her full name, present or last known address, his or her present or last known employment position or affiliation and his or her positions during the time period covered by these interrogatories;

    b.  When used in reference to a corporation, to provide its name and the address or its principal place of business;

    c.  When used in reference to a non-corporate business entity, to provide its name, the nature of the legal entity (e.g., partnership, joint venture, proprietorship, etc.) and the address of its principal place of business;

    d.  When used in reference to a document, to provide the date, author, author's address, addresses, type of document (e.g., letter, memorandum, telegraph, photograph, etc.), its location, and its last known custodian(s);

    e.  When used in reference to any other thing, to describe it in a complete and intelligible manner.

F.  "Policy" or "Policies" means those referred to in the Plaintiffs' Petition unless otherwise specified.

G.  "Underlying claim" or "underlying claims" means those referred to in the petitions in the underlying lawsuit.

H.  "Underlying lawsuit" means the matter entitled "Katherine G. Orillion, et al v. Texaco, Inc., et al," bearing Docket No. 30718 of the 18th Judicial District Court in and for the Parish of Pointe Coupee, State of Louisiana, referred to in the Plaintiffs' Petition.

I.  Unless the context clearly indicates otherwise, the word "and" indicates the conjunctive and the word "or" indicates the disjunctive.

J.  Unless the context clearly indicates otherwise, words used in the singular number apply also to the plural; words used in the plural number include the singular.

K.  All verbs shall be construed to include all tenses.

## INTERROGATORY NO. 1:

Identify by policy number and period of coverage each policy of insurance issued by You to

Texaco, including but not limited to the Policies referred to in the Plaintiffs' Petition.

## RESPONSE TO INTERROGATORY NO. 1:

-3-

### INTERROGATORY NO. 2:

For each policy identified in Your response to Interrogatory No. 1, please provide the following information:

a.   Premiums paid by Texaco;

b.   Policy provisions, terms, and conditions, including deductible amounts, endorsements, riders, addenda, exceptions, policy limits, policy exclusions, choice of law provisions, and provisions regarding defense of the insured;

c.   Claims made against the policy;

d.   Claims allowed against the policy;

e.   Claims disallowed against the policy;

f.   The present location of the policy, and if You do not have a copy of the policy, identify all documents relating to the policy and/or referring to its existence of terms (including any documents or records that refer to or evidence in any way the issuance of any such policy or policies or insurance to Texaco, including but not limited to policy transmittal letters, correspondence with brokers, ledgers, books, or records listing or identifying insureds to whom the policies were issued, files relating to Texaco, accounting records, or underwriting records).

### RESPONSE TO INTERROGATORY NO. 2:

### INTERROGATORY NO. 3:

If You have denied the duty to defend and/or indemnify Andrau in connection with the underlying claim, explain fully each basis (specifically including, e.g., policy language, policy exclusion) for Your position and specifically identify all information upon which you relied in making Your denial.

### RESPONSE TO INTERROGATORY NO. 3:

### INTERROGATORY NO. 4:

Identify each document in which You communicated to Andrau the decision to deny defense and/or indemnity for the underlying claim.

### RESPONSE TO INTERROGATORY NO. 4:

3197593.1

**INTERROGATORY NO. 5:**

Have You reserved Your rights in connection with the underlying claim? If so, explain fully each basis for Your action and identify all communications with Andrau concerning Your reservation of rights.

**RESPONSE TO INTERROGATORY NO. 5:**

**INTERROGATORY NO. 6:**

Identify each document in which You communicated to Andrau the decision to reserve Your rights in connection with the underlying claim.

**RESPONSE TO INTERROGATORY NO. 6:**

**INTERROGATORY NO. 7:**

Identify the name, title, and business address of each person who provided information to respond to these Interrogatories.

**RESPONSE TO INTERROGATORY NO. 7:**

**INTERROGATORY NO.8:**

Identify any compromise and/or settlement agreements, buy-back agreements, or other agreements which You claim terminated Your obligations under any or all policies issued by You to Texaco.

**RESPONSE TO INTERROGATORY NO. 8:**

**INTERROGATORY NO.9:**

If You deny Request for Admission No. 1 or No. 2, please state each reason that supports Your denial.

**RESPONSE TO INTERROGATORY NO. 9:**

3197593.1

<u>INTERROGATORY NO. 10:</u>

If You claim that any action or inaction of Andrau has prejudiced You in connection with the underlying claim which is the subject of this Lawsuit, please specifically state what has prejudiced You and how you claim you have been prejudiced.

<u>RESPONSE TO INTERROGATORY NO. 10:</u>

<u>REQUEST FOR PRODUCTION NO. 1:</u>

Please provide a copy of all policies identified in Your response to Interrogatory No. 1.

<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 1:</u>

<u>REQUEST FOR PRODUCTION NO. 2:</u>

Please provide a copy of compromise and/or settlement agreements, buy-back agreements, or other agreements which you claim terminated your obligations under any or all policies issued by you to Texaco as identified in Your response to Interrogatory No. 8.

<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 2:</u>

<u>REQUEST FOR ADMISSION NO. 1:</u>

Please admit that as of the time you were given notice of the underlying lawsuit:

a.      no exceptions had been heard;

b.      no depositions had been taken, and

c.      the lawsuit had not been set for trial;

<u>RESPONSE TO REQUEST FOR ADMISSION NO. 1:</u>

<u>REQUEST FOR ADMISSION NO. 2:</u>

Please admit that as of the date this discovery was propounded to You the following is true of the underlying lawsuit:

a.      the exceptions have not been heard;

b.      no depositions have been taken, and

b.      the lawsuit is not set for trial.

RESPONSE TO REQUEST FOR ADMISSION NO. 2:

Respectfully submitted,

ONEBANE LAW FIRM
*A PROFESSIONAL CORPORATION*

BY: _____
MICHAEL O. DURAND (LSBA No. 05223)
Suite 300, 1200 Camellia Boulevard (70508)
Post Office Box 3507
Lafayette, LA 70502-3507
Telephone: (337) 237-2660
FAX: (337) 266-1232
Attorneys for Plaintiffs Helene Antoinette
Andrau Siegler and Barbara Andrau Peck
Powell

PLEASE SERVE:

American Motorists Insurance Company
through its registered agent for service of process:
The Honorable Jay Dardenne
Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge, Louisiana

American Manufacturers Mutual Insurance Company
through its registered agent for service of process:
The Honorable Jay Dardenne
Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge, Louisiana

Lumbermens Mutual Casualty Company
through its registered agent for service of process:
The Honorable Jay Dardenne
Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge, Louisiana

The Travelers Insurance Company
through its registered agent for service of process:
The Honorable Jay Dardenne
Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge, Louisiana

The Travelers Indemnity Company
through its registered agent for service of process:
The Honorable Jay Dardenne
Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge, Louisiana

FILED June 89 2010
Signed _____ Dy. Clerk
A True Copy July 6 2010
_____ Dy. Clerk

-7-

3197593.1

Insurance Company of North America
through its registered agent for service of process:
The Honorable Jay Dardenne
Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge, Louisiana

ACE American Insurance Company
through its registered agent for service of process:
The Honorable Jay Dardenne
Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge, Louisiana

-8-

3197593.1

JAY DARDENNE
SECRETARY OF STATE
P.O. BOX 94125
BATON ROUGE, LA 70804-9125





US POSTAGE
$ 07.75⁰
02 1A
0004234138      JUL 12 2010
MAILED FROM ZIP CODE 70002

RECEIVED
JUL 15 2010